## GUERINI STONE COMPANY v. P. J. CARLIN CONSTRUCTION COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 218.   Argued November 7, 8, 1918.—Decided January 7. 1919.

C contracted to erect a federal building, and G subcontracted with C to build the superstructure in a specified time, to be extended to make up for delays caused by the owner, by C or by other causes specified, and C agreed to provide all labor and materials not included in G's contract in such manner as not to delay the material progress of G's work, and to reimburse G for any loss caused by failure to do so. G's work was stopped by the action of the Government in suspending the operations because of a defect in the foundation provided by C, and after more than two months there was still no prospect that G, though ready, could resume within a reasonable time. *Held,* that an agreement that C would furnish a suitable foundation so as not to delay G was imported, which was not dependent on C's fault or the rights of the Government under the main con-

tract, and that G was not confined to the remedy of time extension and reimbursement, but could treat the contract as broken and sue for the breach. P. 340.

When the complaint counts upon a special building contract, and defendant's breach in failing to provide a proper place for plaintiff's work under it, and also upon a *quantum meruit* for labor performed and materials furnished, evidence of materials, etc., left on the premises by the plaintiff at the termination of the contract and appropriated by the defendant, is admissible under the latter count, without regard to its bearing on the damages recoverable under the special contract. P. 342.

Error in admitting evidence cannot be imputed to the trial court upon the theory that a count of the complaint was waived at the trial, when the theory depends on a statement made by plaintiff's counsel in the Circuit Court of Appeals, which was inconsistent with the bill of exceptions. *Id.*

Upon the breach by the defendant of a building contract, certain tools and appliances, brought to the building and used by the plaintiff in performing the contract and susceptible of further use in completing the work, were left in place by the plaintiff and accepted and appropriated by the defendant, *held,* that their value should be considered as part of plaintiff's expenditure under the contract, in computing damages, within the rule laid down in *United States* v. *Behan,* 110 U. S. 338, 344, 346. *Id.*

Where a building contract contemplates that the contractor's ability to perform will depend upon his receiving stipulated payments on account as the work progresses, a substantial failure to pay as stipulated will justify him in declining to proceed with the work. P. 344.

A contractor agreed to do certain concrete work, furnishing the materials, for a stated sum, payable partly in instalments, and by a separate paragraph of the contract offered an option, which was afterwards accepted, to set at so much per square foot certain granite blocks, to be furnished by the other party. There was a general provision for monthly payments on account, not to exceed a certain per cent. of the cost of work erected in the building, to be made upon written requisition, and the parties subsequently agreed upon a mode of estimating concrete work for this purpose. *Held:* (1) That the acceptance of the option did not make a separate contract for the granite work and that the provision for monthly payments applied to that as well as to the concrete work, so that a requisition properly included both classes; (2) that in any event a requisition uniting demands for both classes was unobjectionable if the granite work had

been completed and the full compensation therefor had become payable.  P. 345.

In an action for breach of a building contract, the complaint alleged defendant's failure to make payments upon demands made "in accordance with the contract," while the demands proved were based on a modification of the contract.  *Held*, an unimportant variance not requiring an amendment, particularly in view of the relation of the matter to a former decision and mandate of this court.  P. 346.

An exception to an instruction should be specific, directing the mind of the court to some single point of alleged error.  P. 348.

When the grounds relied on by the Circuit Court of Appeals for reversal prove untenable, this court will consider what judgment should have been rendered in view of other assignments of error.  P. 349.

241 Fed. Rep. 545, reversed.

THE case is stated in the opinion.

*Mr. Edward S. Paine*, with whom *Mr. Eugene Congleton* was on the briefs, for petitioner.

*Mr. John C. Wait*, with whom *Mr. Charles Hartzell* was on the brief, for respondent.

MR. JUSTICE PITNEY delivered the opinion of the court.

This case is before us for the second time, our former decision being reported in 240 U. S. 264. It was an action for damages, brought by the present petitioner as plaintiff against the present respondent as defendant in the District Court of the United States for Porto Rico. Our first review was upon a direct writ of error sued out by plaintiff under § 244, Judicial Code (Act of March 3, 1911, c. 231, 36 Stat. 1087, 1157), prior to the amendment of January 28, 1915 (c. 22, 38 Stat. 804, §§ 3 & 6). Judgment was reversed and the cause remanded for further proceedings. Upon the going down of the mandate a new trial was had, resulting in a verdict in plaintiff's favor

for substantial damages. To review the judgment entered thereon, defendant, under the Act of 1915, prosecuted a writ of error from the Circuit Court of Appeals for the First Circuit, setting up assignments of error based upon rulings of the trial court in admitting and excluding evidence and in giving and refusing instructions to the jury. The Court of Appeals reversed the judgment and ordered the cause to be remanded for further proceedings, 241 Fed. Rep. 545; and to review this judgment the present writ of certiorari was allowed, 245 U. S. 643.

The controversy arose in the course of the construction of a federal post office and court building at San Juan, Porto Rico. Plaintiff had a sub-contract for a part of the work under defendant, which was the general contractor under the Government of the United States. Pertinent clauses of the contract and a general history of the case were set forth in our former opinion and need not be repeated at length.

The evidence at the second trial followed the general lines of the first. Defendant was to construct the foundation complete to the basement floor. Upon this, plaintiff was to construct the principal part of the building, including exterior and interior walls, floors, and roof, to be built of concrete. For this work and the necessary materials defendant agreed to pay to plaintiff the sum of $64,750 in certain monthly instalments on account and the balance on completion. The plans called for certain granite work, for which defendant was to send the cut blocks from the United States; and under an option set forth in paragraph 25, afterwards accepted by defendant, plaintiff was to set this granite for 40 cents per square foot of surface.

It appeared that after the work had been in progress for some time a disagreement arose between the parties about payments on account. Paragraph 12 of the contract provided that there should be "monthly payments on

account, not to exceed in amount 85 per cent. of the cost
of the work actually erected in the building, provided that
the sub-contractor furnishes to the general contractors
a written requisition, on a form to be supplied by the gen-
eral contractors, not less than twelve days before pay-
ment is required," etc. The contract, however, did not
provide how such cost of the work, other than the granite
setting, should be ascertained. In December, 1911, and
January, 1912, plaintiff made written requisitions which
were not complied with; and, according to plaintiff's
evidence, it was agreed between the parties on or about
February 2, 1912, that future applications and payments
should be made upon the basis of a schedule which speci-
fied, *inter alia*, "Exterior and interior concrete walls,
arches, and cement work $1.07 per cubic foot." On March
9, 1912, plaintiff made a requisition for payment computed
on this basis, and showing a balance due of $11,735.95.
This requisition was in effect refused, and no further pay-
ment was made except the sum of $674, which was paid
a few days later.

In the month of February, 1912, the government
superintendent of construction found a serious settlement
in the foundation, as a result of which work upon the
building was ordered to be stopped. This order was
communicated verbally by defendant's representative to
plaintiff's agent at San Juan on the 9th of March, and was
confirmed two days later by letter, in which, however, a
request made by plaintiff's agent for instructions as to
what should be done with plaintiff's force of men pending
the suspension of the work was evaded. Plaintiff stopped
work pursuant to defendant's notice, and did nothing
more upon the building.

Thus matters remained until May 22, 1912, plaintiff in
the meantime having received no payment pursuant to
its requisition of March 9 beyond the small sum men-
tioned above, nor any instructions or permission to pro-

ceed with the work upon the building; and, according to plaintiff's evidence, it was impossible to tell when the work could proceed.  On May 22 plaintiff wrote to the defendant referring to the stoppage of the work and to "the very considerable cost and damage to us caused by your breach of contract," to the inability to get payments from defendant in accordance with the terms of the contract, and to defendant's refusal of an offer of arbitration and refusal of "an assurance that even now we would have an opportunity within any reasonable time to proceed with our work," and concluding with this notification: "Under these circumstances and owing to your entire failure to comply with the terms of the contract, we hereby notify you that we now terminate the contract and shall proceed no further with the work, and that we shall hold you liable for the damages we have sustained by reason of your breach of contract, including your failure to provide labor and materials not included in the contract with us in such manner as not to delay the material progress of our work and your failure to make payments in accordance with the terms of the contract, and all other breaches of contract on your part."

The principal ground of action was based upon the contention that in refusing to respond to plaintiff's requisitions for payments on account, and in the complete and indefinite stoppage of plaintiff's work under the circumstances mentioned, defendant had committed breaches of the contract so material as to amount to a total breach, justifying plaintiff in declining to proceed further and in suing at once for its damages.  See *Anvil Mining Co.* v. *Humble,* 153 U. S. 540, 552.  But as we pointed out in 240 U. S. 283, plaintiff counted also upon a *quantum meruit* for work and labor performed and materials furnished in and about the construction of the building.

The Circuit Court of Appeals attributed error to the trial court in the following respects:

(1) The trial court refused defendant's request to instruct the jury that plaintiff was not justified in terminating the contract because of delays, and in instructing them on the contrary, as the court did in substance, that if it was evident to the parties on May 22, 1912, that there would be a long delay or an indefinite delay, or if it was evidently impossible to tell when the work could be begun again, plaintiff had a right to terminate the contract and was not obliged to await indefinitely the pleasure of the Government as to the resumption of work. It should be noted that when plaintiff took action to terminate the contract, more than two months already had elapsed since the work was stopped. This was undisputed, and of course must be considered in dealing with the instruction referred to.

It is sufficiently obvious that a contract for the construction of a building, even in the absence of an express stipulation upon the subject, implies as an essential condition that a site shall be furnished upon which the structure may be erected. In this case the matter was not allowed to rest upon an implication, for, as we held in our former opinion, the 11th paragraph of the sub-contract, providing: "The general contractors will provide all labor and materials not included in this contract in such manner as not to delay the material progress of the work, and in the event of failure so to do, thereby causing loss to the sub-contractor, agree that they will reimburse the sub-contractor for such loss," as applied to the facts of the case, imported an agreement by defendant to furnish the foundation in such manner that plaintiff might build upon it without delay, and was inconsistent with an implication that the parties intended that delays attributable to the action of the owner should leave plaintiff remediless; and defendant's obligation to furnish a suitable foundation was not dependent on whether it was at fault or whether the delay was attributable to a stoppage of work by the owner in the exercise of a right con-

ferred upon it by a provision of the principal contract which was not brought into the sub-contract.

The Circuit Court of Appeals, however, held (241 Fed. Rep. 549) that although under paragraph 11 defendant would be liable to respond in damages for such delays if plaintiff completed or stood ready to complete its contract, yet it did not follow that if plaintiff was delayed in completing its work within the 300 days specified in paragraph 6 it could decline to go on, since by paragraph 7 it was provided that should the sub-contractor be obstructed or delayed in the prosecution or completion of the work by neglect, delay, or default of the owner (among other causes), the time fixed for the completion of the work should be extended for a period equivalent to the time lost from such causes. The court held that this rendered it clear that delays occasioned to the plaintiff by the owner, the general contractor, etc., were not to excuse plaintiff from proceeding to complete the contract, but were to operate merely as an extension of the time within which by the terms of the contract plaintiff was required to perform its work. In our opinion there was error in holding that the provisions of the 6th and 7th paragraphs limited, thus, the provisions of the 11th. From the fact that by paragraph 6 plaintiff was obliged to finish the work in 300 days, and by paragraph 7 this time was extended for plaintiff's benefit in the case of delays caused by the owner, the general contractor, or otherwise, as specified, it does not follow that plaintiff was not entitled to finish the work more speedily if it could do so; or that a breach of paragraph 11 by defendant, so serious as to result in a total suspension of the work, with no reasonable prospect that it could be resumed within any reasonable time, left plaintiff still under an obligation to hold itself in readiness to proceed, and without remedy except an action for damages under that paragraph.

(2) The court found error in the admission of evidence
tending to show that at the time plaintiff ceased work
it had on hand and left upon the premises certain ma-
terials, machinery and tools of the value of $3,500, which
defendant took and appropriated to its own use. As
pointed out above, the complaint contained a general
claim in the nature of a *quantum meruit* for labor performed
and materials furnished. The particular item in question
was specified in the bill of particulars. This clearly justi-
fied the trial court in admitting the evidence over the only
substantial objection made, which was that it was im-
material and not within the pleadings. There is nothing
to show that it was admitted only for its bearing upon the
question of damages for breach of the special contract.
It is true that in answer to the objection of immateriality
plaintiff's counsel said: "I will show you a case where it
says that the rule is that the plaintiff's expenditure minus
any materials which he may have on hand and plus any
profits which he might have made"—evidently referring
to *United States* v. *Behan*, 110 U. S. 338, 344, 346; but
in responding to a further objection that the material
could not be charged to defendant, plaintiff's counsel
insisted: "I propose to show that the defendant took it
and has it," and followed it up with proof to this effect.

The opinion of the Circuit Court of Appeals (241 Fed.
Rep. 550) shows that counsel for plaintiff in that court
stated that the *quantum meruit* had been disregarded, and
that the trial proceeded solely upon the ground of a
breach of the special contract; but the bill of exceptions
fails to bear this out, and error can not be attributed to
the trial court on that theory. There was no waiver of
the general claim for materials, and the evidence referred
to furnished a ground of recovery upon that claim, ir-
respective of plaintiff's right to recover damages for
breach of the special contract.

But upon the latter question also it was admissible,

upon the assumption that the rule of damages laid down in *United States* v. *Behan, supra,* was applicable, which is not disputed. That rule would give the plaintiff a right to recover what it had expended toward performance of the contract, subject to a deduction for the value of the materials remaining on hand at the time performance was stopped. But of course the deduction is based upon the theory that those materials remained the property of plaintiff and subject to its disposal. If they were appropriated by defendant to its use—and this is what the evidence tended to show—it is plain that their value should not be deducted from; but should be treated as a part of, plaintiff's contribution to the performance of the contract, in addition to its other outlay in respect of work performed.

The Circuit Court of Appeals considered that the furnishing of the materials in question was a matter so entirely outside of the contract that it could not properly be considered as an element of damage for its breach, and that plaintiff's remedy to recover their value must be by action of tort for conversion. But the evidence showed no tortious conversion; it tended to show that the articles were appropriated by defendant with plaintiff's consent; and it hardly is necessary to say that, if tort there were, plaintiff could waive it and sue upon the implied assumpsit. *Great Falls Mfg. Co.* v. *Attorney General,* 124 U. S. 581, 598; *Hirsch* v. *Leatherbee Lumber Co.,* 69 N. J. L. 509, 513.

Nor was this a matter entirely outside of the contract. The materials in question consisted in the main of tools and appliances that had been brought to the building by plaintiff for use in the performance of the contract, were so used, presumably were fitted for further use on the building, and upon the interruption of the work were left in position in the control of defendant and ready to be employed by it whenever it should proceed with the

work that plaintiff had been prevented from doing. If they were accepted and retained by defendant, as the evidence tended to show was the fact, it was proper to take them into account as a part of plaintiff's expenditures upon which the damages caused by defendant's breach of the contract were to be computed.

(3) The next ground of error upon which the Circuit Court of Appeals based its decision was an instruction given to the jury, in substance, that if defendant failed to make payments on account as called for by the contract,—"a substantial failure, amounting substantially to the withholding of the whole payment, not necessarily the whole payment, but the bulk of the payment"— such failure constituted a breach on the part of defendant justifying plaintiff in stopping work and entitling it to recover damages from defendant; and the refusal of a requested instruction to the effect that "The delay of defendant to make payments on estimates, in the absence of a positive refusal to pay anything, was not ground for a rescission or termination of the contract by plaintiff," and that plaintiff's remedy was to recover interest on the deferred payments.

The Circuit Court of Appeals very properly held that in a building or construction contract like the one in question, calling for the performing of labor and furnishing of materials covering a long period of time and involving large expenditures, a stipulation for payments on account to be made from time to time during the progress of the work must be deemed so material that a substantial failure to pay would justify the contractor in declining to proceed. In addition to the provisions of paragraph 12, already referred to, the concluding paragraph of the contract was as follows: "And the said general contractors hereby promise and agree with the said sub-contractor to employ, and do hereby employ him to provide the materials and to do the said work according to the terms

and conditions herein contained and referred to for the price aforesaid, and hereby contract to pay the same at the time, in the manner and upon the conditions above set forth." As is usually the case with building contracts, it evidently was in the contemplation of the parties that the contractor could not be expected to finance the operation to completion without receiving the stipulated payments on account as the work progressed. In such cases a substantial compliance as to advance payments is a condition precedent to the contractor's obligation to proceed. *Canal Co.* v. *Gordon,* 6 Wall. 561, 569; *Phillips Construction Co.* v. *Seymour,* 91 U. S. 646, 649.

But it was held that defendant's refusal to pay was justified because plaintiff's requisitions were not made out in accordance with the provisions of the contract. There were but two requisitions in evidence, one dated December 30, 1911, the other March 9, 1912. Both were held defective, in that they included not only 85 per cent. of the estimated amount of the concrete construction, which was the principal subject-matter of plaintiff's contract, but also a like percentage of the amount earned in setting granite under the accepted option in paragraph 25. The court held that the provision for monthly instalments related only to the former, and that as to the granite work plaintiff was not entitled to payments on account in advance of its completion. In our opinion, however defendant's acceptance of the option to call upon plaintiff to set the granite blocks did not make a separate contract, but merely added something to the work that plaintiff was to do under the contract previously made; and by necessary inference it subjected the granite setting to the appropriate general provisions respecting the method of performance and the time when the work was to be paid for.

Were it otherwise, the requisition of March 9 could not be rejected merely on the ground that it called for a pay-

ment for granite work. We say this because there was
clear evidence—apparently uncontradicted, and at least
sufficient to go to the jury—tending to show that the
granite setting was substantially completed by the early
part of February, and that because the few blocks re-
maining to be set were arriving intermittently and could
be set only at unreasonable cost, it was then at plaintiff's
request agreed by defendant that plaintiff should set no
more granite. This part of the work was thus brought
to a close, or so the jury might find; in which event, if it
constituted a separate contract, payable at completion,
as the Circuit Court of Appeals held, plaintiff on March
9th was entitled to demand not only 85 per cent., but the
entire amount due for granite setting.

(4) The court held the requisition of March 9 to be
defective upon the further ground that it was based upon
the unit price of $1.07 per cubic foot, pursuant to the
understanding said to have been arrived at between the
parties on February 2, instead of the actual cost of the
work erected in the building as required by paragraph
12 of the contract. It was held that since the complaint
alleged that plaintiff's demands for payment were made
"in accordance with the terms of the contract," evidence
to show the agreement made on February 2 about unit
prices was not admissible without an amendment of the
complaint setting up a modification of the contract.

This view cannot be upheld. The allegation quoted
from the complaint did but touch upon the performance
of a condition precedent, concerning which the former
niceties of pleading no longer obtain. And besides, evi-
dence of the agreement of February 2 about unit prices
was introduced at the first trial and was particularly
referred to in our opinion reviewing it (240 U. S. 273–274);
and the requisition of March 9, then as now relied upon
by plaintiff, was excluded from consideration by us only
because such details as were then furnished did not appear

to bear out the estimate contained in it as to the amount of work that had been completed (240 U. S. 282), an omission that was supplied at the second trial. As the case went back for further proceedings in conformity with that opinion, the trial court doubtless considered that compliance with our mandate required the admission of the testimony as to the agreement of February 2, which furnished the basis of the requisition of March 9, and that no amendment of the pleadings was necessary. Were there doubt about this, we should deem it proper that the complaint be amended, or treated as if amended, even in the appellate court, rather than that the judgment should be reversed for so unimportant a variance, not in the least prejudicial to defendant.

(5) The final ground upon which the reversal was rested was an instruction given by the trial court to the jury upon the question of damages in the following terms: "If you find he [meaning plaintiff] was justified in terminating the contract as he did on May 22 upon the principles above given you, you can consider the reasonable expenditures incurred by the plaintiff, the unavoidable losses incident to stoppage, the amount of work actually performed, the amount plaintiff was actually entitled to by reason of such work at the contract price, and the profits which plaintiff could have made if allowed to complete the work under the contract. So the different items that you may, if you come to the question, take into account, are the outlays less the material on hand, the amount of work actually performed and the profits, if you find there were any which were not speculative. The measure of profits is the contract price less what is shown to you as the expense of carrying out the contract, if that is shown to you to your satisfaction." The appellate court held this instruction to be misleading because it embodied a duplication of elements. Respecting this a difficult question would be presented if defendant were

in a position to raise it. When the case was here before,
we assumed (240 U. S. 282, 283) that an instruction simi-
larly phrased ought to have been granted at plaintiff's
request had it been confined in its application to a re-
covery based upon a finding that the contract was right-
fully terminated by the notice of May 22, 1912; but, this
was an assumption *arguendo*, and not a part of the matter
decided.

At the second trial this part of the charge was given by
the court of its own motion, not at plaintiff's request; nor
was it excepted to by defendant. The statement of the
Circuit Court of Appeals to the contrary (241 Fed. Rep.
555) is not borne out by the record. The proposition
criticized is not contained in any of the instructions re-
quested by plaintiff; and even had it been requested there
is no exception touching it unless it be the following: "I
will ask on behalf of the defendant an exception . . .
to the action of his Honor . . . in giving all instruc-
tions requested by plaintiff." This is altogether too
general to be regarded as directing the mind of the trial
court to any single and precise point of alleged error so
as to call for a reconsideration of the ruling, and hence
could not furnish a basis for reversing the judgment.
That an exception must be specific need not be empha-
sized. *McDermott* v. *Severe*, 202 U. S. 600, 610; *United
States* v. *U. S. Fidelity Co.*, 236 U. S. 512, 529.

There was another exception, couched in these terms:
"To that part of the charge to the effect that if the plain-
tiff had the right to terminate the contract under the
authority of the *Behan case*, the measure of damages
would be not only the expenses incurred by the plaintiff,
but also reasonable profits." This, however, refers to
another passage in which the trial court quoted from the
headnote in 110 U. S. 338. This clause contained no
reference to the amount of work performed or what plain-
tiff was entitled to by reason of this work at the contract

price; it mentioned only (a) plaintiff's outlay, and (b) the lost profits, embodied no duplication of elements, and was not erroneous.

Having found that none of the grounds relied upon by the Circuit Court of Appeals for reversal of the judgment of the trial court is tenable, it remains to consider what judgment ought to have been rendered upon the record and bill of exceptions, in view of the assignments of error other than those we have thus far considered. *United States* v. *U. S. Fidelity Co.*, 236 U. S. 512, 528. There were 101 assignments in all, and these have been examined with the aid of respondent's brief, which extends to 250 pages; in addition to the oral argument; but we have found no ground for reversing the judgment of the trial court.

*Judgment of the Circuit Court of Appeals reversed, and that of the District Court affirmed.*