**GREAT LAKES CONST. CO. et al. v. RE-PUBLIC CREOSOTING CO.**

No. 12607.

Circuit Court of Appeals, Eighth Circuit.

Dec. 10, 1943.

William R. Bascom, of St. Louis, Mo. (William G. Pettus, Jr., and Arthur B. Shepley, Jr., both of St. Louis, Mo., McKnight, McLaughlin, Dunn & Sims, of Chicago, Ill., and Nagel, Kirby, Orrick & Shepley, of St. Louis, Mo., on the brief), for appellants.

Forrest M. Hemker, of St. Louis, Mo., and George A. Reilly, of Chicago, Ill. (Greensfelder & Hemker, of St. Louis, Mo., and Scott, MacLeish & Falk, of Chicago, on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is to reverse a judgment for $12,279.29, found to be the value of work and materials furnished by Republic Creosoting Company, a sub-contractor, to Great Lakes Construction Company, the prime contractor, in the construction of the Post Office Building at Eighteenth and Market Streets in St. Louis, Missouri. Republic intervened in the action brought by another materialman under the Heard Act, 40 U.S. C.A. § 270, against the bond supplied by Great Lakes as principal and several companies appellants as sureties pursuant to the terms of that statute. Republic originally had a sub-contract with Great Lakes to furnish the work and material to complete the wood flooring in the building for $32,500, but on the trial to the court without jury it was held that Republic had been prevented from the performance of its contract without its fault and that Great Lakes had breached it and the judgment for recovery on the bond was on the quantum meruit. A counterclaim for damages asserted by Great Lakes for alleged breach of the contract by Republic was dismissed.

On this appeal Great Lakes does not question that Republic furnished work and materials in the construction of the floor-

ing in the building, nor that the fair value was as adjudicated, but it contends (1) that Republic's action against the bond was barred by the applicable time limitation of the Heard Act; and if it was not, (2) that the court erred in ascribing the breach of the sub-contract to Great Lakes instead of to Republic.

(1) The original Heard Act provisions as to the time for bringing action on public building contractors' bonds, 40 U.S.C.A. § 270, were repealed and amended by the Act of August 24, 1935, but the terms of the amendment continued them in force in respect to the contract here involved, 40 U.S.C.A. (1942) § 270, and the parties rightly agree that Republic's intervention here had to be filed within one year from "completion and final settlement" of the contract of the Great Lakes company. The question decided by the trial court and presented to this court by the appeal, is whether the "final settlement" was on August 24, 1940, or whether it was on November 13, 1940. The Republic's intervention was filed September 8, 1941, and was too late if the final settlement date was August 24, 1940, but it was within the year from November 13, 1940.

The contract of the Great Lakes Company for the construction of the building for $3,636,163 was entered into with the Procurement Division of the United States Treasury Department, but the functions of that division in respect to it were subsequently transferred to the Federal Works Agency. The administrative action of August 24, 1940, relied on by the Great Lakes company to establish "final settlement" on that date, was by the Federal Works Agency. Republic denies the finality of that action and contends that the "final settlement" is evidenced by certificate of the Comptroller General on November 13, 1940, as decided by the trial court.

It appears that: The contract between Great Lakes and the United States provided: "The compensation hereinbefore stipulated to be paid shall be reduced by the amount that the contracting officer, subject to the approval of the Comptroller General, shall find the cost of performing this contract is reduced solely by reason of the contractor not complying with the provisions of any code or codes of fair competition, or any related requirements (as provided in Executive Order Numbered 6646 of March 14, 1934); and such compensation shall be increased by the amount

that the contracting officer, subject to the approval of the Comptroller General, shall find the cost of performing this contract has been increased solely by reason of compliance with any acts of Congress enacted after August 29, 1935, requiring the observance of minimum wages, maximum hours, or limitations as to age of employees in the performance of contracts with agencies of the United States."

The amount to be added or subtracted was a question for determination between Great Lakes and the United States. In addition, in August of 1939 there had been a flood in the post office which caused damage to certain electrical installations. A dispute arose between the United States and Great Lakes as to whether the building had been accepted at the time of the flood so that the loss was that of the United States or whether it had not been accepted so that the loss was that of Great Lakes. The amount involved was $11,911.-38. There was also the question of the Government's right to damages for the delay in performance from February 28, 1938, to August, 1940.

On August 24, 1940, Neal A. Melick, Acting Commissioner of Public Buildings, addressed the following communication to the Federal Works Administrator:

"The following report and recommendation are submitted relative to Contract No. TIPW 2537, with the Great Lakes Construction Company, Chicago, Illinois, for construction of the Post Office Building, St. Louis, Missouri:

Date of contract.......... Sept. 6, 1935
Time for completion fixed in
    contract (900 days from
    9–12–35) .............. Feb. 28, 1938
Time for completion as extended under Articles 3 &
    9 (207 days) ........... Sept. 23, 1938
Liquidated damages for delay ................. $200.00 per day
Amount of contract as originally awarded ............. $3,636,163.00
Additions from time to time.. 185,583.74
                              _____
                              3,821,746.74
Deductions from time to time    20,178.66
                              _____
                              3,801,568.08
Less payments on account.... 3,711,729.40
    Balance ............... $  89,838.68

"A review of the records indicates that the work under this contract was substantially completed, (more than 99%), and the building occupied, by June 23, 1939. In addition to the defects and omissions found at final inspection there remained to be completed the cafeteria and equipment for same. It is shown that at the time the building was occupied the loading platform and adjacent C.O.D. space was not ready for use, making it necessary for the postal activities to occupy the cafeteria space temporarily, so that it was not available for cafeteria work until May, 1939, and the work was completed by September 13, 1939. The defects and omissions were not of a character to interfere with the transaction of business and were all corrected or supplied by March 4, 1940. The delays in the correction of the defects and omissions and the completion of the work in the cafeteria was the cause of no loss or inconvenience to the Government.

"Regarding the delay in substantial completion the contractors report that same was due to various strikes, labor disputes, abnormal weather conditions, and clearing old brick sewer. Careful examination of the records confirms the contractors' statements and shows that such delay was mainly caused by strikes and labor disputes over which the contractors had no control. Since the delays experienced from the causes given account for all of the time from September 23, 1938, to June 23, 1939, it is recommended that liquidated damages be waived in accordance with the Act of June 6, 1902, as amended by Reorganization Plan No. 1, under the Reorganization Act of 1939.

"In accordance with Public Resolution No. 65 a representative of the contracting officer made an examination of the contractors' records on March 18 to March 20, 1940, and reported that reductions due to noncompliance with approved codes of fair competition amounted to $1,246.72, and the records indicated no instance whereby the contract amount should be increased, as provided in said Resolution.

"As a result of a flood during the month of August, 1939, the St. Louis, Missouri, Post Office suffered damage to the extent that the building ceased functioning. On August 5, 1939, the contractors were advised of the flood, and that, inasmuch as all construction items had not been completed, the costs involved appeared to be their responsibility. Exigency repairs sufficient to allow the building to function were made and the contractors called upon

to complete the remainder. Under date of March 5, 1940, the contractors denied all responsibility for damages caused by floods on the ground that their work had been completed. Accordingly a contract was awarded, after competition, for completion of the repairs, and the work was accomplished by April 4, 1940. On June 26, 1940, an itemization of the amounts paid for repairs, indicating a total of $11,911.38, was forwarded to the contractors, with the request that they submit a proposal for a deduction in this amount, they being advised that if such deduction proposal was not received by July 10, 1940, recommendation would be made that the amount would be deducted from the balance due under the contract. The proposal has not been received.

"In view of the fact that this contract is subject to Public Resolution No. 65, which provides that the Comptroller General approve the findings of the contracting office, and since the contractors have failed to assume responsibility for the cost of the repairs made necessary as the result of damage to the building by flood, it is recommended that said contract be referred to the Comptroller General for direct settlement."

This communication was endorsed by John N. Edy, Acting Federal Works Administrator, as follows: "Approved, Damages Waived, and Contract Referred to the Comptroller General of the United States for Direct Settlement. August 24, 1940."

On September 12, 1940, the Federal Works Agency sent the following communication to the General Accounting Office:

"Reference is made to Contract No. TIP W 2537, dated September 6, 1935, with the Great Lakes Construction Company, for construction of the Post Office Building at St. Louis, Missouri.

"The contractors have refused to accept responsibility for damage to the building as a result of a flood during August, 1939, and have failed to submit a deduction proposal in the amount of $11,911.38, to cover the cost of having the damage repaired.

"The contract is subject to Public Resolution No. 65, and the records indicate that a deduction of $1,246.72 should be made due to non-compliance with approved codes of fair competition.

"In view of the above, the contract is referred to your office for direct settlement. Agency report of August 24, 1940, setting forth the facts in connection with the contract, and waiving liquidated damages for delay, together with correspondence relative to the contractors' failure to comply with fair competition codes, are inclosed."

On October 23, 1940, the Federal Works Agency wrote Greensfelder and Hemker (attorneys for Republic) as follows:

"You are informed that final settlement authorization was not made by this office in connection with the contract of Great Lakes Construction Co., for construction of the post office building at St. Louis, Missouri.

"The case was referred to the Comptroller General of the United States, Washington, D. C., on September 12, 1940, for direct settlement. Any further information in the premises should be obtained from that official.

"By direction of the Supervising Engineer.

"Very truly yours,
"H. Raskin,
"Acting Asst. Administrative Assistant to the Supervising Engineer."

On November 13, 1940, the General Accounting Office issued the following certificate of settlement:

"Certificate of Settlement
General Accounting Office
Certificate No. 0612409
Claim No. 0399457 (12) Washington, D. C.
Nov. 13, 1940.
Released for payment April 3, 1941
F.W.A.
(P.B.A.)
1784883
(Space reserved for paying offices)
F. G. Allen,
Chief Disbursing Officer
Treasury Department
Symbol 88050
Great Lakes Construction Company,
125 West Madison Street,
Chicago,
Illinois.
*Checks to issue as noted below:
See Mailing address below.
I Certify there is due from the United States to the above-named claimant(s), pay-

able from the appropriation(s) indicated, the sum of

Eighty-eight Thousand Five Hundred Ninety-one and 96/100 Dollars ($88,591.96)

on account of

amount due under contract No. TIPW-2537.

.80X1054 Emergency Construction of Public Buildings, Public Buildings Administration, Act June 19, 1934.
80X1054.149—$88,591.96

Two checks to issue:

*Great Lakes Construction Company 125 West Madison Street, Chicago, Illinois. .. $76,680.58
*Treasurer of the United States 11,911.38
For credit to:
'804275 Reimbursement, Excess Cost Over Contract Price.'

Mail check to Great Lakes Construction Company, c/o Maryland Casualty Company, attention D. A. Wallace, Room 1011, Insurance Exchange Building,
175 West Jackson Boulevard
. Chicago, Illinois.

To: Chief Disbursing Officer Apr. 7, 1941 Issue warrant(s) and send check(s) to claimant(s).

Lindsay C. Warren
Comptroller General of the
United States
By J. Murray."

■ As the Federal Works Agency had the construction of the Post Office Building under the Great Lakes contract "in charge", it appears to be well settled that it could have made "final settlement" of the contract within the intendment of the Heard Act, notwithstanding the powers reserved in the Comptroller General. Globe Indemnity Company v. United States, 291 U.S. 476, 54 S.Ct. 499, 78 L.Ed. 924; National Surety Corporation v. Reynolds, 3 Cir., 87 F.2d 865. But it also had the authority in the alternative to "ask the accounting office to render a decision upon a question involving payment." Globe Indemnity Company v. United States, supra, 291 U.S. loc. cit. 480, 54 S.Ct. loc. cit. 500, 78 L.Ed. 924.

■ The question in this case therefore resolves itself to whether the documents establish that the Works Agency exercised its full authority to make final administrative settlement. Our conclusion is in accord with that of the district court, that

they do not. The wording of the report and the endorsements thereon, read together with the letter enclosing it to the General Accounting Office, indicates that it was the intent and purpose of the Works Agency to define remaining disputes existing between the United States and the Great Lakes as contractor, affecting the amount due on the contract, and to refer the final settlement on the contract to the General Accounting Office. The report contains the circumstances and particulars of the disputes, and the letter refers to the report as "setting forth the facts in connection with the contract." The disputes are reduced by the report and its approval to the two matters of flood damage and the deduction for noncompliance with codes of fair competition and are summarized in two paragraphs of the letter, which then says in its concluding paragraph: "In view of the above [summary of the two disputes] the contract is referred to your office [General Accounting Office] for direct settlement." The documents contain no declaration, certification or determination that an amount certain was found to be due under the contract, but, in conclusion, specifically refer the contract for direct settlement, and they are in sharp contrast to the certificate of settlement issued by the Comptroller General, November 13, 1940, on which the trial court relied. In that document it is found that "there is due" a certain definite sum of money, and if it had been the intention of the Agency to make administrative "final settlement" we think some expression of similar unequivocal import would have been found in its documents.

The amount appearing in figures on the first page of the report opposite the designation "Balance" is nowhere stated or declared to be the amount found, determined or certified to be the amount due under the contract to the contractor, nor is there any recommendation that any definite amount be paid the contractor. On the matter of liquidated damages for delay in performance of the contract, stated in the report to be $200 per day, there appears an unequivocal recommendation of waiver, which was approved, and that matter is entirely omitted from the letter of transmittal. But there is no corresponding expression concerning the other two important and substantial disputes that stood in the way of final settlement. The Agency did not finally settle the contract but referred it for direct settlement.

The appellant cites United States, for Use of Central Cement Finishing Company v. Continental Casualty Company, D.C., 28 F.Supp. 314, affirmed, 2 Cir., 114 F.2d 1018, as opposed to the trial court's conclusion, but in that case there was the specific administrative finding of an amount due and recommendation for payment thereof which were not made by the Agency in this case. The conclusion that the time for intervention ran from November 13, 1940, is sustained. Illinois Surety Company v. United States to Use of Peeler, 240 U.S. 214, 36 S.Ct. 321, 60 L.Ed. 609; National Surety Corporation v. Reynolds, 8 Cir., 87 F.2d 865; Lambert Lumber Company v. Jones Engineering Co., 8 Cir., 47 F.2d 74; Globe Indemnity Co. v. United States, 291 U.S. 476, 54 S.Ct. 499, 78 L.Ed. 924; H. G. Christman Co. v. Michigan Gypsum Co., 8 Cir., 85 F.2d 474; Mandel v. United States, 3 Cir., 4 F.2d 629; Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 113 F. 2d 111, 130 A.L.R. 197; Breen Stone & Marble Co. v. United States, D.C., 21 F. Supp. 982.

(2) The trial court found the facts concerning the breach of the flooring contract, as follows:

"That on September 6, 1935, the defendant, Great Lakes Construction Company, entered into a contract with the United States to construct the United States Post Office at St. Louis, Missouri, for an agreed consideration of $3,636,163.00 and, as required by the Heard Act (40 U.S.C.A. § 270) defendant, Great Lakes Construction Company, as Principal, and defendants, Maryland Casualty Company, Aetna Casualty and Surety Company, Hartford Accident and Indemnity Company, Massachusetts Bonding and Insurance Company, Glen Falls Indemnity Company, Sun Indemnity Company, The Fidelity and Casualty Company of New York, United States Fidelity and Guaranty Company, Indemnity Insurance Company of North America, Great American Indemnity Company, American Surety Company of New York, National Surety Corporation and New Amsterdam Casualty Company, as Sureties, on September 6, 1935 entered into a performance bond in the penal sum of $1,850,-000.00, conditioned that prompt payment be made to all persons supplying the principal with labor and materials in the prosecution of the work provided for in the contract with the United States; that said contract and bond were for the construction of a public building or public work.

"That on October 25, 1935 the intervenor, Republic Creosoting Company, entered into a sub-contract with the defendant, Great Lakes Construction Company, whereby the Republic Creosoting Company agreed to furnish all labor and material for the installation of the standard wood flooring in said post office in accordance with plans and specifications, for an agreed consideration of $32,500.00; that by its contract with the United States, the Great Lakes Construction Company was to complete its contract within 900 calendar days after notice to proceed, which notice was given September 12, 1935 and the post office was to have been completed by February 28, 1938; that Republic Creosoting Company, by its contract with the Great Lakes Construction Company, was required to completely install the flooring by December 1, 1937 under penalty of paying liquidated damages of $200.00 per day for each work day required for completion beyond December 1, 1937 and it was further provided by said contract that the work was to be wholly complete on or before December 1, 1937.

"That the post office building was to be constructed in two units; that the then existing post office building was to be occupied by the post office until Unit No. 1 was completed and ready for occupancy and the post office was then to move into Unit No. 1, after which the old post office building was to be wrecked and a building referred to as Unit No. 2 was then to be constructed on the site.

"That on or about October 25, 1935 defendant, Great Lakes Construction Company, prepared its construction schedule correlating the work of the various subcontractors and laying out the same, so that the post office would have been fully completed within the 900 calendar days provided for in the contract between Great Lakes Construction Company and the United States and between the dates September 12, 1935 and March 1, 1938; that the times on which the various sub-contractors were to commence and complete their respective work were indicated on said construction schedule and a copy of same furnished to the Procurement Division of the Treasury Department, together with its communication of the same date advising that the work would progress as indicated on the construction schedule; that

such construction schedule showed the completion date for the wood flooring on Unit No. 1 to be December, 1936, and Unit No. 2 to be January, 1938; that the Great Lakes Construction Company exhibited the construction schedule to a representative of the Republic Creosoting Company shortly after the execution of their sub-contract and advised that the Republic Creosoting Company was to complete Unit No. 1 by the end of December, 1936; that except for delays, Unit No. 1 would have been completed prior to January 1, 1937; that on January 31, 1936 the Great Lakes Construction Company, in response to an inquiry of the Republic Creosoting Company, stated that the flooring in Unit No. 1 would be needed late in the Fall; that to make reasonable progress in accordance with the construction schedule and to enable Republic Creosoting Company to complete its performance by December 1, 1937, it was necessary that the Great Lakes Construction Company complete Unit No. 1 prior to January 1, 1937; that the contract between the Great Lakes Construction Company and the Republic Creosoting Company required the Republic Creosoting Company to use union labor; that prior to January 1, 1937 the union scale for carpenter foremen was $1.50 per hour, for carpenters $1.25 per hour and for laborers $.7875 per hour; that after January 1, 1937 the union scale was increased so that the scale for carpenter foremen was $1.75 per hour, for carpenters $1.50 per hour and for laborers $.875 per hour; that Unit No. 1 was not ready to receive flooring until June 17, 1937; that the increase in the cost of performance to Republic Creosoting Company on Unit No. 1 between the Fall of 1936 and June of 1937 was $1262.00 for labor in Unit No. 1 due to the change in the union scale and $3493.00 for material due to a rise in the cost to Republic Creosoting Company of flooring, a total increase in cost of performance to Republic Creosoting Company of $4755.00; that on June 17, 1937 it was impossible for Great Lakes Construction Company to have completed Units 1 and 2 of the post office in time to have enabled Republic Creosoting Company to have installed the flooring as required by its contract by December 1, 1937, or within any reasonable time thereafter; that prior to July 1, 1937 the Republic Creosoting Company refused to go forward with the flooring installation under the sub-contract unless Great Lakes Construction Company would compensate it

for the increased costs resulting from delay; that the contract between Great Lakes Construction Company and the Republic Creosoting Company contained a clause providing that if the sub-contractor failed to proceed after 72 hours notice from the general contractor, that the Great Lakes Construction Company had the right to supply the labor and material and charge the cost against the Republic Creosoting Company's account and the Republic Creosoting Company agreed to pay such amount as had been expended by the Great Lakes Construction Company toward completing its work; that on July 1, 1937 Great Lakes Construction Company, relying on said clause, gave a 72 hour notice to Republic Creosoting Company to proceed and advised that on default in proceeding it would have the work done for Republic Creosoting Company and charge the cost to said company; that Republic Creosoting Company again refused to proceed under its contract; that at the time of said 72 hour notice by Great Lakes Construction Company said company had materially and substantially breached its contract with Republic Creosoting Company by reason of its failure to furnish a site for the work at such time as to have permitted Republic Creosoting Company to perform its contract by December 1, 1937; that such breach was material in that the delay continued for an unreasonable length of time and the cost of performance to Republic Creosoting Company was substantially and materially increased by said delay; that after July 1, 1937 Great Lakes Construction Company purchased the flooring required for Unit No. 1 and Unit No. 2 and proceeded with the installation of the flooring in Unit No. 1 and actually installed with its own labor and materials approximately one-third of the flooring required in Unit No. 1; that such installation was made by the Great Lakes Construction Company between July 1, 1937 and August 2, 1937; that on August 2, 1937 Republic Creosoting Company took over the installation of flooring in Unit No. 1 and completed the same by October 19, 1937, furnishing the labor and part of the materials necessary for such installation and completion; that such labor and materials were of the reasonable value at the time furnished of $11,555.17; that at the time the Republic Creosoting Company commenced installing the flooring in Unit No. 1 on August 2, 1937, the Great Lakes Construction Company was insisting that the

Republic Creosoting Company perform under its contract and was insisting that Great Lakes Construction Company had the right thereunder to charge against Republic Creosoting Company any increased cost of performance over the contract price of $32,-500.00, including the cost of flooring theretofore purchased by the Great Lakes Construction Company; that at said time the Republic Creosoting Company was asserting that the Great Lakes Construction Company had breached the contract so as to excuse Republic Creosoting Company from performance; that the Republic Creosoting Company proceeded with the installation of the flooring in Unit No. 1 after conferences with representatives of the Great Lakes Construction Company, at which it was suggested that the Republic Creosoting Company could install the floors cheaper than the Great Lakes Construction Company and that the amount in controversy would thereby be diminished and the rights of the parties be reserved for future adjustment or adjudication; that the aforesaid conduct of the parties constituted a mutual abandonment of the contract between them so far as performance thereunder was concerned, but that both the Great Lakes Construction Company and the Republic Creosoting Company reserved the right to adjudicate their contentions with respect to liability for the alleged breach of contract which each asserted against the other; that during the time Republic Creosoting Company was completing the installation of the flooring in Unit No. 1, the Great Lakes Construction Company refused to pay it anything on account as the work progressed.

"That after the occupancy of Unit No. 1 by the post office on November 15, 1937, the Great Lakes Construction Company began the wrecking of the old post office building and commenced the construction of Unit No. 2; that Unit No. 2 was not ready for flooring until March 27, 1939; that on March 29, 1939 the Great Lakes Construction Company made a second demand upon the Republic Creosoting Company, purporting to require it to proceed with the installation of flooring in Unit No. 2 within 72 hours and advised that in case of default it would have the work done for Republic Creosoting Company and charge the cost to said company; that at the time of such demand, the Great Lakes Construction Company was still insisting upon its right to charge the Republic Creosoting Company for any cost it might incur in excess of the contract price and refused to pay Republic Creosoting Company anything for the labor and materials supplied by the Republic Creosoting Company in installing the flooring in Unit No. 1; that the Great Lakes Construction Company was at such time insisting that the Republic Creosoting Company use the flooring which it had purchased in 1937 and install the same in Unit No. 2; that the Republic Creosoting Company and the Great Lakes Construction Company had been unable between November 15, 1937 and March 29, 1939 to adjust their respective contentions with regard to the alleged breach of contract and the Republic Creosoting Company was on March 29, 1939 still contending that it had been excused from performance and in response to the notice of the Great Lakes Construction Company refused to install the flooring in Unit No. 2; that at the time of the notice of March 29, 1939 the parties by their conduct had abandoned the contract; that the Republic Creosoting Company had been excused from performance thereof and was under no obligation to proceed with the installation of flooring in Unit No. 2; that the Republic Creosoting Company, having supplied labor and material of the reasonable value of $11,555.17 and same having been used and installed in the post office building and accepted by the Great Lakes Construction Company and the United States, Republic Creosoting Company is entitled to recover of Great Lakes Construction Company and the defendants, sureties on its bond, the sum of $11,555.17, with interest thereon from September 8, 1941, the date of filing the intervening petition, to date of judgment, at six per cent; that the Great Lakes Construction Company, having committed a material breach of its contract with Republic Creosoting Company is not entitled to recover any part of its cost over the contract price and is therefore not entitled to recover any part of its counterclaim."

Upon the facts so found the court stated its conclusions of law:

"The Court declares the law to be that it was the duty and obligation of the defendant, Great Lakes Construction Company, to construct and make ready the United States Post Office buildings in time to have enabled the intervenor, Republic Creosoting Company, to complete the installation of the wood flooring on or before December 1, 1937, as required by its contract with the Great Lakes Construction Company, and that the failure of defend-

464

ant, Great Lakes Construction Company, to construct and make ready the buildings within such time, or within any reasonable time thereafter, substantially and materially increased the intervenor's cost of performance and constituted a material and total breach of contract by defendant, Great Lakes Construction Company, so as to excuse the Republic Creosoting Company from the performance of said contract and also to preclude the defendant, Great Lakes Construction Company, from recovering on its counterclaim its increased cost over the contract price incurred in furnishing and installing such flooring.

"The Court declares the law to be that the conduct of the parties after the material breach of the contract by the Great Lakes Construction Company constituted an abandonment of the original contract and that the Republic Creosoting Company, having furnished material and labor which was accepted and received by the Great Lakes Construction Company and used and employed in the United States Post Office, is entitled to have and recover in quantum meruit the reasonable value of such labor and material at the time the same was furnished, together with interest at six per cent per annum from the date of the filing of its intervening petition in this action.

"The Court declares that under all the evidence and law in this case the defendant, Great Lakes Construction Company, is not entitled to recover on its counterclaim and that judgment thereon be in favor of the Republic Creosoting Company and against the Great Lakes Construction Company."

Examination of the record has persuaded that the findings of the trial court are supported by substantial evidence and are not clearly erroneous. Nor do we find any error in the conclusions of law stated by the trial court. Although Great Lakes had made full provision in its contract with the Government against loss on its part resulting from excusable delays, there was no agreement upon modification of the contract obligation of Republic to complete the flooring sub-contract by December, 1937, under the provision for the payment of heavy damages for non-performance. The law applicable to sub-contracts

for building construction such as here involved is well settled. As stated by the Supreme Court in Guerini Stone Co. v. Carlin Construction Co., 248 U.S. 334, loc. cit. 340, 39 S.Ct. 102, 104, 63 L.Ed. 275: "It is sufficiently obvious that a contract for the construction of a building, even in the absence of an express stipulation upon the subject, implies as an essential condition that a site shall be furnished upon which the structure may be erected."

And it is equally obvious that a contract to construct the flooring in a building implies timely provision of the situs for its location. The failure of Great Lakes to have the building ready for the flooring fully justified Republic's refusal to proceed and Great Lakes clearly recognized the refusal and accepted it by buying the material and undertaking to do the work itself. There was, as properly found by the trial court, an abandonment of the sub-contract, and the acceptance of the work and material furnished by Republic upon the understanding detailed in the findings justified and required the recovery upon the quantum meruit which was awarded. Guerini Stone Co. v. Carlin Construction Co., 248 U.S. 334, 39 S.Ct. 102, 63 L.Ed. 275; H. C. Lindsly & Son v. Kansas City Viaduct & Terminal Ry. Co., 152 Mo.App. 221, 133 S.W. 389; Interstate Construction Co. v. United States Fidelity & Guaranty Co., 207 Mich. 265, 174 N.W. 173; Guaranty Iron & Steel Co. v. Leyden, 235 Ill. App. 191.

Though we have not failed to note the contentions urged for the Great Lakes that "time was not of the essence" of the Republic's contract, and that "the issue in hand should be determined upon the equities of the case", we have not found any substantial ground in reason or equity to hold Republic to the terms and conditions of the flooring sub-contract whose performance was rendered impossible by Great Lakes' failure to provide a place for the flooring and which was regarded as terminated and was abandoned. As the counter-claim was rested wholly on the sub-contract and alleged wrongful breach thereof by Republic, it need not be separately discussed. It was properly dismissed.

The judgment on the quantum meruit is affirmed.