SOUTH TEXAS LUMBER CO. et al. v. CONCRETE CONST. CO. et al.

(Court of Civil Appeals of Texas. Galveston. June 15, 1911.)

1. ASSIGNMENTS (§ 88*)—EFFECT.

Where contractors, in order to procure funds and material to complete a building contract, made absolute transfer of all money due and to become due under the contract to a lumber company, to secure it for material to be furnished and for advances to pay labor as the work progressed, the owner could not be required to pay any part of the money to subcontractors and materialmen.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 135, 136; Dec. Dig. § 88.*]

2. ASSIGNMENTS (§ 88*)—BUILDING CONTRACT—ASSIGNMENT OF PRICE—RIGHTS OF SUBCONTRACTORS.

Building contractors, being without funds to perform a contract, assigned all money due and to become due thereunder to a lumber company, to secure it for advances of materials, etc. Thereafter the contractors gave orders in favor of subcontractors and materialmen on the lumber company, and these, being refused for lack of funds, were withdrawn and filed with the architect. Thereafter the lumber company received money sufficient to pay the orders, but not sufficient to satisfy them and its own advances. *Held*, that the lumber company was not a trustee of the fund for the benefit of subcontractors and laborers, and was under no obligation to pay subcontractors' claims in preference to its own claim for materials and money furnished, etc.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 135, 136; Dec. Dig. § 88.*]

Appeal from District Court, Harris County; W. P. Hamblen, Judge.

Action by the Concrete Construction Company and others against the South Texas Lumber Company and others. Judgment for plaintiffs, and defendant lumber company and B. W. Armstrong appeal. Reversed and remanded.

D. E. Garrett, Lane, Wolters & Storey, and Wm. A. Vinson, for appellants. Wilson, Dabney & Meachum, for appellee Secor. Tharp & Whitehead, for appellees Barthold & Casey. Love & Channell, for appellee Concrete Construction Co.

REESE, J. In this suit the Concrete Construction Company and B. F. Secor sued B. W. Armstrong and the South Texas Lumber Company, and A. J. Grady individually and as surviving partner of the firm of Van Demark & Grady; the construction company to recover $435.64, and B. F. Secor to recov-

er $225. Barthold & Casey came in as intervener; plaintiffs seeking to recover against the same parties $229. Upon trial with a jury, a verdict was returned in favor of the Concrete Construction Company against Armstrong for $435.64, and in favor of Barthold & Casey and B. F. Secor against the South Texas Lumber Company for $229 and $225, respectively, and in favor of all of the parties against Grady for the amounts, respectively, adjudged to them as aforesaid. From the judgment rendered upon this verdict, B. W. Armstrong and the South Texas Lumber Company prosecute this appeal.

The facts out of which the controversy grew, so far as they are undisputed, are as follows: On August 1, 1907, B. W. Armstrong entered into a contract with the firm of Van Demark & Grady, contractors, to make certain repairs and improvements on his homestead, located on lots 3 and 4, block 5, south side of Buffalo bayou, in the city of Houston. The contract was in writing, but was not signed by the wife of Armstrong. The price to be paid was $5,425. There is no question of lien in the case; the property being the homestead of Armstrong and wife. Van Demark & Grady were without sufficient means to procure the materials and labor for the work, and made a verbal contract with the South Texas Lumber Company to furnish them the lumber for the work, and in addition to furnish other money to carry on the work, as to which there is some conflict. The terms of this contract will be further referred to herein. In order to secure the lumber company for such material as it furnished and such sums of money as it paid out under its contract with them, Van Demark & Grady gave the lumber company the following written assignment of their claim on Armstrong: "Houston, Texas, August 5, 1907. To Mr. B. W. Armstrong, Corner Main and Stewart, Houston, Texas: We hereby assign, transfer and set over to the South Texas Lumber Company, of this city, the sum of five thousand four hundred twenty-five & no-100 ($5,425.00) dollars, the same being the entire amount of our contract with you for the erection of certain specified improvements upon lots No. 3 and 4, block 5, south side of Buffalo bayou, city of Houston. Under the foregoing you will please pay such amounts as are from time to time due us under said contract to the said company. Signed in triplicate this 5th day of August, 1907, in the city of Houston, Texas. G. C. Van Demark, A. J. Grady, Contractors." This assignment was presented to and accepted by Armstrong.

Under this assignment the lumber company furnished such material as was required, and also such money as was required, from time to time, to pay the labor, up to $5,425 and a little more, when they declined to go in any further. It seems that Van De-

mark & Grady were unable to complete the job, and it had to be finished by the sureties on their bond, who were officers of the lumber company. The evidence leads to the conclusions that the lumber company had been instrumental in procuring the job for the contractors, and had made their bond, through the individual action of its officers, and that the inducement for it to do so was the opportunity it gave it to sell the lumber and other material for the work. The job having been finally completed, on May 11, 1908, Armstrong paid to the lumber company the balance under the original contract price of $5,425, amounting to $2,479.70. The contract between Armstrong and Van Demark & Grady required payments to be made at the rate of 80 per cent. of the value of labor and materials every two weeks, and the balance when the work was completed. By contract with Van Demark & Grady, the Concrete Construction Company furnished concrete blocks for the foundation and other work on the building, amounting to $635.64, of which $435.64 was unpaid, and is still due, and on January 20, 1908, the construction company wrote and delivered to Armstrong the following letter: "Houston, Texas, Jan. 20, 1908. Mr. B. W. Armstrong, No. 217½ Main St., City—Dear Sir: We furnished Van Demark & Grady the necessary concrete blocks for the foundations and the topping out of the chimney for your house corner of Main and Stewart streets, on which they still owe us $435.64, on which we are unable to secure payment from them. This is to advise that we look to you for payment of this account. We are sending a copy of this letter to Mr. Steele, the architect, Mr. Grady and the South Texas Lumber Company. [Signed] Concrete Construction Co. H. N. Jones, Vice President & General Mgr." Armstrong testified, and it is not contradicted, that he told these subcontractors that he would hold the balance of the money due on the contract as long as he could, and he did do so until May 11th, when, on demand, he paid the balance due to the lumber company. The case as to the Concrete Construction Company rests upon the foregoing facts, which are undisputed, and we may as well dispose of that branch of the case here. It is not necessary to discuss in detail the assignments of error.

[1] The assignment of Van Demark & Grady to the South Texas Lumber Company operated to transfer completely and absolutely to it all money due, or to become due, under the contract, and thereafter Armstrong was not authorized and could not be required to pay any part of the money to any one else. By his acceptance, and even without such acceptance, by notice to him of the assignment, he became bound to pay to the lumber company. There is no question of lien of any kind on the property, nor on the

fund, so far as Armstrong is concerned. Armstrong owed, not Van Demark & Grady, but the South Texas Lumber Company, their assignees. Van Demark & Grady owed the Concrete Construction Company, and under this condition the Concrete Construction Company made demand upon Armstrong for payment of its debt. After such demand upon demand of its creditor, the lumber company, Armstrong paid it the balance due. We think no sort of refining can give any other aspect to the undisputed facts, and they utterly fail to show any liability on the part of Armstrong to the Construction Company. Suppose A. buys a horse from B., which B. had bought from C. A. owes B. for the horse, and B. owes C. for it. C. then makes demand upon A. to pay him the money he owes B. Disregarding the demand, A. pays B. Clearly he would not be liable to C. merely upon his demand. If B. had, prior to this demand, assigned the debt which A. owed him to D., which assignment had been presented to and accepted by A., we would have, in all of its essential elements, the present case. The judgment of the Concrete Construction Company against Armstrong is without support in the evidence, and the jury should have been instructed to return a verdict in favor of Armstrong. The facts as to this branch of the case appear to have been fully developed. The judgment against Armstrong in favor of the Construction Company is therefore reversed, and judgment here rendered that it take nothing on its demand against him.

During the progress of the work, Van Demark & Grady became indebted to B. F. Secor, subcontractor, in the sum of $225 for plastering, and to Barthold & Casey, subcontractors, in the sum of $211.10, and, on December 13, 1907, they gave Barthold & Casey a written order on the South Texas Lumber Company for the amount, and on December 10th they gave B. F. Secor an order on the lumber company for the amount due him. Secor presented his order a few days after it was given to him. Let Secor tell his own story about what occurred. He testified: "I wrote the order which you hand me; the date shown here is December 10th. That is the only way I have of remembering the dates. It was December 10, 1907, when I received it, and it is an order by Van Demark & Grady to the South Texas Lumber Company for $225, in full for plastering on Armstrong house on Main and Stewart streets. After Mr. Grady gave me this order, I took it down to Mr. Timmons, of the South Texas Lumber Company; but the first time I went down there he was not in, and in fact I didn't find him for a day or two, but I finally located him, and told him I had it, and handed it to him, and he looked at it and said, 'that is $200,' but I told him, 'No; it is for $225.' 'Well,' he said, 'Grady told me it would be $200.' Then he said he didn't have the money, and was unable to pay it now. 'Well,' I said to him, 'the job is done, and I am in need of the money, and I want it,' and he said he couldn't pay it now. He said he didn't have it, and then said he had about a $2,300 estimate on the 23d, I believe it was, and that as soon as he got it he would pay my bill, and I said, 'All right; I will leave this matter with you, and you can pay it Saturday.' That was the 23d, and he said, 'If I get it, I will pay it,' and I said, 'All right; I will leave the order with you.' So I went away and let the matter rest until the next week, and that Saturday I went in there, and he wasn't in; and I came back to town and ran across Grady, and I says, 'Here, Grady, I want that money,' and he got in the buggy with me, and we went down to the office of the South Texas Lumber Company, and I don't remember whether Mr. Timmons was in when we went in or not; but, at any rate, he came in a few minutes afterwards, if he was not in, and I says to him, 'What about that money?' and he said, 'I haven't got the money now, and can't pay it,' and I said, 'When are you going to pay it?' and he said, 'I don't know,' and then I said, 'Give me my order, and I will make other arrangements; this work is done, and I want the money, or my order.' So I demanded the order, which he gave me, and I took the order down to Steele, the architect." The evidence shows that the lumber company had no money on hand out of this $5,425 due and to become due from Armstrong, at this time. On the contrary, Van Demark & Grady were largely indebted to it for material furnished on the job and cash advanced in and about the work under its contract, and the last payment made by Armstrong was insufficient to pay what Van Demark & Grady owed. After the presentment of this order, however, sufficient money came into the hands of the lumber company to pay Secor's claim, which was paid out on claims for labor and for materials furnished by the lumber company.

On December 13, 1907, Van Demark & Grady gave Barthold & Casey a written order on the South Texas Lumber Company for the amount due them. This order was presented by Barthold to Timmons, president of the lumber company, and he declined to pay, on the ground that he had no money from that fund. In fact at that time, as stated, Van Demark & Grady were largely indebted to it for money advanced and material furnished, after deducting all money received by the lumber company from Armstrong. Timmons declined to accept the order, as Barthold requested him to do, but proposed to him that he leave the order, and this Barthold declined to do, unless Timmons would accept it, and took the order with him, and afterwards took up the matter with Steele, the architect. The evidence

shows that afterwards the lumber company paid out in advancements to labor more than the amounts due to Secor and Barthold & Casey.

[2] The court charged the jury that, if the orders referred to were presented to the South Texas Lumber Company and the company failed to pay the same, and if it had funds in its hands out of the money due from Armstrong and assigned to it, or if money afterwards came into its hands from this fund, by which such claims could have been paid, and if the lumber company thereafter received money from Armstrong and paid other claims, it would be liable to these plaintiffs. Under appropriate assignments of error, this charge is assailed as not presenting several issues upon which the liability of appellant the South Texas Lumber Company was conditioned, as presented by the evidence, and we think the assignments must be sustained.

It is not true, as stated in the charge, that Van Demark & Grady had assigned their contract to the South Texas Lumber Company. The lumber company was in no way bound by the terms or obligations of the contract between Armstrong and the contractors. It was only bound, as to the disposition of the money assigned to it, by its agreement with Van Demark & Grady, and assumed no obligation to Armstrong with regard to his contract with the contractors.

Neither is there any place here for the application sought to be made to the facts of this case of the familiar and settled equitable doctrine that a trustee having accepted a trust will not be allowed to profit therefrom at the expense of the cestui que trust, nor to place himself in a position antagonistic to his rights or interest. As we understand, appellees' contention is that, as trustee of this fund for the benefit of themselves and others, laborers and subcontractors under Van Demark & Grady, the South Texas Lumber Company was required to postpone its own claim for material furnished on the house to the claims of others, to whom Van Demark & Grady might become indebted for labor or materials, including appellees. This is, we think, a total misapplication of the equitable doctrine referred to. The primary purpose of the lumber company in making its agreement with the contractors was to sell to them the lumber and other materials for the work. In order to do this, they agreed to advance money, according to Timmons' testimony, to pay laborers; "to meet the weekly pay rolls"; according to Grady's testimony, to "finance the job" generally; and it procured the assignment to secure it in the payment of such indebtedness, including as well that for lumber furnished by it. This imposed upon the lumber company, neither in law nor in equity and good conscience, any obligation to pay appellees' claim in preference to its own claim for lumber furnished. The lumber company had in fact obligated itself to furnish lumber for the job, and had a right to protect itself before paying the claims of appellees. This principle was ignored in the charge.

Again, the effect of Timmons' testimony is that his agreement (acting for the lumber company) with Van Demark & Grady was to advance money to pay laborers on the building only, and did not include such claims as those of appellees. If this be true, claims of subcontractors on this fund would have to be postponed until claims for labor had been paid, as well as the claim of the lumber company for material furnished. It is true that according to Grady's testimony the contract between him and the lumber company would have also included these claims, as well as laborers' wages; but whether he or Timmons is correct about this was an issue for the jury, which was not presented by the charge, and the error was not one of omission merely, but the charge authorized a recovery by appellees without regard to the rights of the lumber company, under the views above set out, and was affirmative error.

Again, as to appellee Secor at least, the evidence tended to show, if it did not expressly show, that in his withdrawal of his order he gave the lumber company to understand that he waived all claims against it as custodian of this fund. In such case the lumber company was under no obligation to him to retain any of this money to meet his claim. Under the court's charge, notwithstanding this, the jury was authorized to find for Secor the amount of his claim, if it had at the time of such presentment or afterwards received money from Armstrong, which it paid out on other claims. Upon this theory, the lumber company, having afterwards paid out all of this money, could not be held liable to Secor, even if the order given to him be treated as an assignment pro tanto of the money paid or to be paid by Armstrong. The evidence tends also to show that the action of Barthold in refusing to leave the order with Timmons, upon his promise to pay when he was in funds, and taking the matter up with Steele, the architect, in an endeavor to get his money in another way, created, and was sufficient to create, in the mind of Timmons the impression that they also would not look to the South Texas Lumber Company for payment. These issues should have been presented to the jury; and it was error to charge the jury that the naked fact that after the orders were presented the lumber company received from Armstrong, and paid out to others, to whom Van Demark & Grady were liable, money out of this assigned fund would authorize a recovery by appellees.

We have not thought it necessary to discuss in detail the assignments of error. What we have said sufficiently shows what we think were errors committed by the trial court requiring a reversal of the judgment.

The judgment in favor of B. F. Secor and Barthold & Casey is reversed, and as to them the cause will be remanded for a new trial in accordance with this opinion.

Reversed and rendered in part. Reversed and remanded in part.