**CITIZENS NATIONAL BANK OF OR-LANDO and West Construction Company, Appellants,**

v.

**K. H. VITT et al., Appellees.**

**No. 21510.**

United States Court of Appeals
Fifth Circuit.

Oct. 5, 1966.

Rehearing Denied Dec. 6, 1966.

Charles E. Davis, Fishback, Davis, Dominick & Troutman, Orlando, Fla., for appellants.

Wayne P. Sturdivant, Simpson, Adkins, Fullingim & Hankins, Amarillo, Tex., for appellees.

Before JONES, WISDOM and GEWIN, Circuit Judges.

JONES, Circuit Judge:

The United States Air Force contracted with K. H. Vitt, V. O. Stringfellow and Burl Johnson, partners or joint venturers doing business as Stringfellow Amarillo Associates, herein called Stringfellow, for the construction of a housing project at the Amarillo, Texas, Air Force Base under the Capehart Act, 42 U.S.C.A. § 1594 et seq. American Casualty Company of Reading, Pennsyl-

vania, and General Reinsurance Corporation of New York, became sureties on Stringfellow's performance and payment bonds.

Stringfellow and West Construction Company, a Florida corporation, entered into three subcontracts on September 17, 1958, under which West undertook to perform (1) the excavation, area grading and landscaping, (2) the construction of paved streets and (3) the construction of curbs, drives and walks. West arranged with Citizens National Bank of Orlando, Florida, to finance its part of the work, and assign to the bank all moneys to become payable to it under its subcontracts. The assignment directed that the bank be a payee in all checks. Stringfellow agreed to the assignment with a reservation of the right to make payments to suppliers, subcontractors and government agencies. Stringfellow made a number of payments to West, without including Citizens bank as a payee of the checks.

After the work had been in progress for some months difficulties were encountered by West. It discovered that more soil was to be moved than had been originally contemplated. West's labors were increased by the delays of Stringfellow in removing spoil for which it had responsibility and by other conduct of Stringfellow. West was required to place a six-inch sandlayer on the house pads which had not been contemplated by either Stringfellow or West. Other difficulties were encountered and differences arose between Stringfellow and West. They undertook to resolve these differences by an agreement dated May 15, 1959.

On August 11, 1959, Stringfellow issued and delivered to West a check drawn on the Amarillo National Bank for $25,000 payable to West and Citizens bank, postdated to September 11, 1959. West indorsed the check to Citizens bank and the bank advanced West $22,000 against the check. On September 11, 1959, the check was presented for payment at the Amarillo bank. Payment was refused and the check returned on

account of insufficient funds. On September 17, 1959, the Amarillo bank informed the Citizens bank that a deposit had been made which "should take care of the item." The check was not paid. The district court found that Stringfellow stopped payment on the check on August 21, 1959. This finding is not challenged by West. The failure of Stringfellow to honor its $25,000 check effectively prevented West from obtaining further financing and, after a brief effort to go forward on the job, it was required to suspend operations. Stringfellow made no further payments to West or to West and Citizens bank. It did make some payments to suppliers of West which, in one or more instances, included items for which West had denied liability because the Government had refused to approve the suppliers' work.

Citizens bank brought a suit against West, Stringfellow and others, asserting that West was required by Stringfellow to perform work in addition to that required by the subcontracts and the May 15, 1959, agreement, that West terminated performance by reason of breaches of contract by Stringfellow, that Stringfellow is indebted to West, that the Citizens bank had advanced to West $234,178.50, and Stringfellow and the other defendants owe this amount to the bank pursuant to the assignment. West admitted the bank's allegations and cross-claimed against Stringfellow and the other defendants. Stringfellow denied any indebtness to the Citizens bank or to West and cross-claimed against West for sums alleged to be owing to it for the completion of the West subcontracts after West left the job. The testimony taken and the exhibits filed were voluminous.

The district court made no express finding as to whether Stringfellow had breached any duty to West, and made no conclusion as to whether a breach by Stringfellow would have justified West in the abandonment of the job with a right to recover on a quantum meruit for the work performed. The court did find

that West was entitled to credit for the work performed by it at the contract prices and that Stringfellow was entitled to recover the amounts which it would be required to pay to complete the work of the subcontracts. For example, West was credited with 45-cents per cubic yard for moving dirt. For the amount remaining to be done, Stringfellow was entitled to $1.15 per cubic yard which the court found to be a reasonable price for such work. A like situation existed and like findings were made with respect to the concrete work to be done as to sidewalks and driveways. The district court held that Stringfellow had a legal right to stop payment on the $25,000 check as between Stringfellow and West, but no right to stop payment as to the Citizens bank. The court entered judgment in favor of Citizens bank against Stringfellow and West for $22,000, in favor of Citizens bank against West for $106,655.91, in favor of Stringfellow against West for $5,937.13. West was denied recovery against Stringfellow and the sureties upon its construction bonds without prejudice to require Stringfellow to prosecute a claim against the United States for the so-called house pad work. Citizens bank and West have appealed.

■■ The initial contention of Citizens bank and West is that Stringfellow breached its agreement with West, that because of the breaches by Stringfellow of its contractual obligations to West it was justified in terminating its contract, and that having properly, and with cause, terminated the contract it is entitled to recover on a quantum meruit for its work performed. The law is well settled that "in every contract between a contractor and a subcontractor, an implied promise exists on the part of the contractor that he will do nothing to prevent, interfere or hinder the subcontractor in his performance or increase the cost thereof." Lichter v. Mellon-Stuart Co., W.D.Pa. 1961, 193 F.Supp. 216, mo. for new trial den. 196 F.Supp. 149, aff. 3 Cir., 305 F.2d 216, quoted with approval, 6 Williston on Contracts

433, § 887. See Guerini Stone Co. v. P. J. Carlin Construction Co., 248 U.S. 334, 39 S.Ct. 102, 63 L.Ed. 275; Owens v. William H. Banks Warehouses, 5th Cir. 1953, 202 F.2d 689, cert. den. 346 U.S. 813, 74 S.Ct. 22, 98 L.Ed. 341; Vanadium Corporation of America v. Fidelity & Deposit Company, 2d Cir. 1947, 159 F.2d 105; Great Lakes Construction Co. v. Republic Creosoting Co., 8th Cir. 1943, 139 F.2d 456; State of California v. United States, N.D.Calif. 1957, 151 F.Supp. 570; 8 McBride & Wachtel, Government Contracts 49–194 § 49.150[4]. Wherever the cooperation of a promisee is necessary for the performance of a contract, there is an implied condition of the contract that the cooperation will be given. Vanadium Corporation of America v. Fidelity & Deposit Company, supra.

■ The district court, in its findings, determined that "Stringfellow as prime contractor, fell far short of a properly coordinated operation and that failure substantially increased the cost of West's operations." The district court found that "An example, in respect to how Stringfellow's operations burdened West's costs was the circumstance that he [sic], as prime contractor, did not cooperatively remove the earth spoils from his own portions of the project with minimum hindrance to West." Thus it is found that Stringfellow did not cooperate and that its improper actions hindered West in carrying on its operations. Only in part was this settled by the agreement of May 15, 1959. Future hindrances were not waived. There was evidence of other acts and omissions of Stringfellow which showed a failure to cooperate with West and an interference with and hindrance of West's work.

■■ West asserts a breach of its agreement with Stringfellow in connection with the so-called sand pad claim. The Government required a six-inch sand layer on the house pads in the project. Stringfellow and West both contended that this work was not in the contract but yielded to the Government's demand and West yielded to the insistence of Stringfellow and did the work. By the May 15, 1959, agreement Stringfellow undertook diligently to prepare and process a claim for this work and pay the amounts collected over to West. The district court found that Stringfellow and the local contracting officer of the Government agreed that West was entitled to $58,435.76 for this work. The district court found that "up until the date of the trial of this case, defendants [Stringfellow and the sureties on its bonds] had only submitted the claim to the local contracting officer, who approved it, and defendants had failed to pursue it any further, although defendants had notice of the subsequent procedures required for payment." The failure to process the claim with diligence was a breach of the promise of Stringfellow. This promise was contained in the agreement of May 15, 1959, rather than in the subcontracts executed eight months earlier. It appears, however, that the May 15, 1959, agreement related to the performance of work under the prime contract of Stringfellow. It cannot, of course, be said that if Stringfellow had been diligent in the prosecution of the claim against the Government it would have been allowed and paid before West left the job in October, 1959, nor can the contrary be assumed. It can be inferred that if the claim had been processed and paid before that date, West could have continued on the job. It may well be that West failed to supply Stringfellow with the data required for making the claim until too late to permit processing and payment in time to furnish funds that would have permitted West to stay on the job. As to these questions, there is some evidence but no findings. In its brief West asserts that the delay has resulted because of a dispute between Stringfellow and its sureties as to the disposition of that part of the claim against the Government in which West had no share. In an appendix to its brief West sets out what purports to be a copy of a judgment of the United States District Court for the

District of Idaho granting judgment for the sureties of Stringfellow against the Stringfellow partners and their indemnitor on the bonds, with a provision in a judgment which gave the sureties or the indemnitor the right to the proceeds of Stringfellow's claim against the United States. This was brought before this Court for the apparent purpose of showing Stringfellow's lack of interest in the processing of its claim and West's claim which was tied in with it. It appears that the Idaho judgment was not before the district court in this cause and this Court will not take judicial notice of it. It is implicit in the district court's findings that Stringfellow did not diligently process the West claim but it is doubtful that it had breached its undertaking at the time West terminated its work. We believe the case to be that the failure to process West's claim was not shown to be a breach by Stringfellow justifying West's termination of its contracts. But since there were breaches by Stringfellow which justified West in leaving the job, as is apparent from the district court's findings, the failure of Stringfellow to process West's house pad claim, although occurring subsequent to West's termination of its contracts, may be considered in connection with West's claim for damages for which it might recover.

■ West claims that Stringfellow breached its contractual obligations to it when Stringfellow stopped payment on the $25,000 check. The district court found otherwise. The district court found that the dishonor of the check had a chain-reaction effect and left West without means to prosecute the remaining work on the subcontracts. Stringfellow knew, the court found, that stopping payment of the check would leave West stranded but was within its rights as between itself and West in stopping payment. Stringfellow's voucher for the issuance of the check contained the statement "Advance on August estimate as per agreement." Stringfellow knew that West intended to negotiate the check to Citizens bank in advance of its date. Under these circumstances, Stringfellow ought not be heard to say that it was justified in stopping payment because its indebtedness to West was less than the amount of the check. Stringfellow asserted that the stop order was proper because West had represented that funds were needed to pay creditors and meet payrolls and had not used all of the funds for such purposes. It does not appear that the delivery of the check was conditioned upon any specific application of any funds that West might raise on the check, or that West covenanted to make any specific uses of the money so raised. The check was an obligation of Stringfellow to West. We do not think the evidence warranted the finding that Stringfellow was legally justified in refusing to perform its obligation to West represented by the check. The stop payment order put West out of business. It seems to us that the obligation of the check was an incident of the relationship arising from the subcontracts and that the breach of such obligation justified West in leaving the job.

■ Deciding, as we do, that Stringfellow breached its contractual undertakings to West, and that West was justified in terminating the contract, we come to the question as to the effect of such termination upon the rights of Stringfellow, the prime contractor, and West, the subcontractor. Succinctly stated, this is the rule, "Once a subcontractor has established a breach of contract by the prime, he can recover the value of the work he has done or the service he has rendered. In other words, he is entitled to a quantum meruit." 8 McBride and Wachtel, Government Contracts 49–185, § 49.150[4]. Cf. Great Lakes Construction Co. v. Republic Creosoting Co., supra; Carter v. Myers, Tex. Civ.App., 149 S.W.2d 248; 17A C.J.S. Contracts § 440, p. 553.

■ The district court made no findings or conclusions with respect to the claim of Citizens bank against Stringfellow for payments to West alone in breach of the assignment by West to the bank. There should have been a

determination of this issue. This Court, in reviewing a judgment from one of the district courts of Texas, held that where a subcontractor assigned to a bank moneys payable under the subcontract and directed that checks be made payable to the subcontractor and the bank, and the prime contractor accepted the assignment, there was a contract for the benefit of the bank which it could enforce as a donee beneficiary, and the bank could recover from the prime contractor on breach of the contract by the prime contractor. Wolters Village Management Co. v. Merchants and Planters National Bank, 5th Cir. 1955, 223 F.2d 793. The same rule has been recognized and applied by Texas courts. Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769; Chapman v. Tyler Bank & Trust Co., Tex.Civ.App., 396 S.W.2d 143; Carr & Howard Construction Co. v. Panhandle State Bank, Tex.Civ.App., 347 S.W.2d 793; South Texas Lumber Co. v. Concrete Construction Co., Tex.Civ.App., 139 S.W. 913. In determining the question of the liability of Stringfellow to Citizens bank, there may be defenses available in whole or in part. Where a check payable to West alone was deposited by it in Citizens bank it can claim no injury because it was not named as a payee. Since the assignment was as security, Stringfellow will not be liable to the bank for checks made to West alone at such time or times, if any there were, when West was not indebted to the bank. The reservation by Stringfellow, in its acceptance of the assignment, of the right to make payments to suppliers and subcontractors will not, of course, excuse it for making payments to West without including the name of the bank as a payee of the checks.

From what has been said, it follows that the judgment must be reversed and the cause remanded for further proceedings. The quantum meruit, on which West may recover, is different from the contract prices. West may establish the reasonable value of its sand pad work. The liability of the sureties on Stringfellow's bond for such quantum meruit award as may be made to West should be ascertained. The liability of Stringfellow to the Citizens bank on the assignment should be reconsidered and determined. No question has been raised with respect to the judgment against Stringfellow in favor of the Citizens bank, and that portion of the judgment will be affirmed. The remainder of the judgment will be reversed and the cause remanded for further consideration in light of this opinion.

Affirmed in part, and in part reversed and remanded.