414 F.2d 696
 The UNITED STATES of America For the Use and Benefit of
CITIZENS NATIONAL BANK OF ORLANDO, a National
Banking Corporation, Plaintiff-Appellee,
v.
V. O. STRINGFELLOW, Burl Johnson and K. H. Vitt, et al.,
Defendants-Appellants.
 No. 26853.
 United States Court of Appeals Fifth Circuit.
 July 30, 1969.
 
 Wayne P. Sturdivant, Simpson, Adkins, Fullingim & Hankins, Amarillo, Tex., for appellants.
 L. A. White, Culton, Morgan, Britain & White, Amarillo, Tex., Charles E. Davis, Fishback, Davis, Dominick, Troutman & Salfi, Orlando, Fla., for Citizens National Bank of Orlando and West Construction Co.
 Before AINSWORTH and GODBOLD, Circuit Judges, and DAWKINS, District judge.
 AINSWORTH, Circuit Judge:
 
 
 1
 Appellant, Stringfellow Amarillo Associates, was engaged as the prime contractor for the construction of a Capehart Act (42 U.S.C. 1954 (1964)) housing project at the Amarillo Air Force Base, Potter County, Texas. On September 17, 1958, Stringfellow separately subcontracted to appellee, West Construction Company, the following work on this project: (1) the excavation, area grading, and landscaping, (2) the construction of paved streets, and (3) the construction of curbs, drives, and walks. Under the first of these subcontracts West was to move dirt in conformance with specified contour lines. As the work progressed, West discovered that more soil had to be moved than West had originally contemplated. Moreover, 'West's labors were increased by the delays of Stringfellow in removing spoil for which it had responsibility and by other conduct of Stringfellow. * * *' Citizens National Bank of Orlando v. Vitt, 5 Cir., 1966, 367 F.2d 541, 543. Because of these and other difficulties encountered by West and to resolve differences that arose between West and Stringfellow, a compromise agreement was made by the parties on May 15, 1959. Subsequent to that agreement, however, further differences arose, and West ultimately suspended its operations on the project.
 
 
 2
 An action was brought in the United States District Court for the Northern District of Texas in which Judge Joe B. Dooley denied West's claim in quantum meruit against Stringfellow. On October 5, 1966, a panel of this Court reversed and remanded the case:
 
 
 3
 'Deciding, as we do, that Stringfellow breached its contractual undertakings to West, and that West was justified in terminating the contract, we come to the question as to the effect of such termination upon the rights of Stringfellow, the prime contractor, and West, the subcontractor. Succinctly stated, this is the rule, 'Once a subcontractor has established a breach of contract by the prime, he can recover the value of the work he has done or the service he has rendered. In other words, he is entitled to a quantum meruit.' '* * * The quantum meruit, on which West may recover, is different from the contract prices. * * *' Citizens National Bank of Orlando v. Vitt, supra at 546, 547.
 
 
 4
 Upon remand[1] the District Court held that West was entitled to $236,249.39 from Stringfellow. This amount was computed as follows. The parties did not dispute that subcontractor West was due $399,564.84 from contractor Stringfellow or that Stringfellow was entitled to offset $425,671.85 against the sum of the undisputed amount due West and the value of the dirt work performed by West. The parties did not agree, however, upon the value in quantum meruit of that dirt work. The District Court (Judge Hughes) found that $1.15 per net cubic yard of dirt moved was the reasonable value of the work performed by West and that West was entitled to $661,921.24 ($262,356.40 for the moving of 228,136 cubic yards of dirt plus $399,564.84, the undisputed amount) minus the offset of $425,671.85, or $236,249.39.
 
 
 5
 The original contract price for the dirt work was to be computed at 45cents per cubic yard of dirt moved. The District Judge found, however, that this price would have been the reasonable value of the services performed by West 'only if West had been able to work unhampered by the numerous obstacles and interferences occasioned by Stringfellow's failure to properly co-ordinate the project.' Specifically, the trial judge held that West's costs had been increased significantly by the excess dirt and other obstacles scattered over the jobsite, by the necessity of reworking some sections as many as four times, and by delays caused by Stringfellow's interference. The original trial court had found that the reasonable value of the dirt work performed by Stringfellow to finish the job left uncompleted by West when West quit was $1.15 per cubic yard of dirt moved, and the retrial court concluded that this value was also the reasonable value of the dirt work performed by West. The retrial judge found that the services were substantially the same and reasoned that 'if anything the fair value of West's work was greater than Stringfellow's since Stringfellow did not have to rework sections and was not hampered by the numerous interferences which confronted West.'
 
 
 6
 In this appeal Stringfellow attacks the District Court's determination of the fair value of the dirt work performed by West on the grounds that (1) the May 15, 1959 compromise agreement establishes as a matter of law that the value of the work at issue cannot exceed $97,947.90[2] because that agreement conclusively settled between the parties that West was to receive this amount for moving 233,450 cubic yards of dirt and West actually moved 228,136 cubic yards, (2) the District Court's determination of value is clearly erroneous and unsupported by any evidence, and (3) the evidence conclusively establishes that the value of the work is to be measured at the rate of 45cents per cubic yard (the original contract price). We disagree with these contentions.
 
 
 7
 The decision of a panel of this Court on October 5, 1966, precludes reconsideration of the argument that the May 15 compromise agreement is binding upon West. That decision is the law of the case, In re United States, 5 Cir., 1953, 207 F.2d 567; In re N. V. Zuid-Hollandsche Scheepvaart Mattschappij of Rotterdam, 5 Cir., 1933, 64 F.2d 915, and we are not free to redetermine the issues decided therein. See Kaku Nagano v. Brownell, 7 Cir., 1954, 212 F.2d 262. The law of the case is that West is entitled to recovery from Stringfellow in quantum meruit, Citizens National Bank of Orlando v. Vitt, 5 Cir., 1966, 367 F.2d 541, 546, and the 'quantum meruit, on which West may recover, is different from the contract prices.' Id. at 547. Inherent in that panel's holding is that West was no longer bound by the terms of either the subcontract or the compromise agreement respecting the dirt work, because these had been breached by Stringfellow. West was not limited in its quantum meruit recovery by the contract price of 45cents per cubic yard of dirt moved. Instead, West could recover "the value of the work (it) has done or the services (it) has rendered." Id. at 546.
 
 
 8
 We conclude that the District Court's determination of the reasonable value of the contour dirt work performed by West was correctly made. Since the issue of reasonable value was determined upon the basis of the record made prior to the remand to the District Court,[3] Stringfellow's burden before this Court of showing that the trial judge's findings are 'clearly erroneous' under Fed.R.Civ.P. 52(a) is 'not as heavy, therefore, as it would be if the case had turned on the credibility of witnesses appearing before the trial judge.' Sicula Oceanica, S.A. v. Wilmar Marine Eng., 5 Cir., 1969, 413 F.2d 1332 (July 7). Nevertheless, this Court must apply the 'clearly erroneous' test. Id. See also Lundgren v. Freeman, 9 Cir., 1962, 307 F.2d 104, noted in 41 Texas L.Rev. 935 (1963). A review of the record convinces us that a mistake has not been made.
 
 
 9
 The record indicates, first, that West encountered many difficulties in moving dirt in conformance with the contour lines because of Stringfellow's failure properly to coordinate the project. Moreover, although the net effect of West's labors was to move 228,136 cubic yards of dirt, in many instances the dirt had to be reworked a number of times. Forty-five cents may have been a reasonable price for moving a cubic yard of dirt once. If, however, that cubic yard were required to be moved two or three times before it came to rest with finality at its proper destination, the costs incurred would obviously be significantly higher, and the reasonable value of the work would be similarly greater. The record discloses that West was required to move 233,450 cubic yards of dirt in conformance with specified contour lines and that West completed 97.72 per cent of the job. Thus the finding that West moved 228,138 cubic yards of dirt has reference to the amount of dirt finally conforming to the contour lines whose movement is attributable to West's efforts and not to the gross amount of dirt actually moved during the course of West's labors.
 
 
 10
 The 5,314 cubic yards of dirt moved by Stringfellow after West quit the job was assigned a reasonable value of $1.15 per cubic yard moved by the original trial judge. The record indicates that one third of this work by Stringfellow involved 'stockpiled dirt' and that this work was similar to the work performed by West. In light of the difficulties that West encountered while on the job and the substantial similarity between the type of work performed by West and Stringfellow, it is not unreasonable to assume that the relative costs of the dirt work performed by Stringfellow after West left the project and that performed by West previously were the same. The value of West's performance is to be determined 'not by the extent to which (Stringfellow's) total wealth has been increased thereby, but by the amount for which such services and materials as constituted the part performance could have been purchased from one in (West's) position at the time they were rendered,' Restatement of Contracts 347, comment c (1932), and the costs of such performance are relevant to this determination. E.g., United States for Use of SusiContracting Co. v. Zara Contracting Co., 2 Cir., 1944, 146 F.2d 606. Thus, although clearly the District Court was not able to utilize a precise mathematical formula based upon direct evidence, we believe that the lower court properly determined the reasonable value of the contour dirt work performed by West.
 
 
 11
 Affirmed.
 
 
 
 [1]
 Judge Sarah T. Hughes acted as special presiding judge Dooley
 
 
 [2]
 This figure was computed as follows. Under the original subcontract West was to receive 45cents per cubic yard for moving 200,000 cubic yards of dirt, or $90,000. To this amount the May 15 compromise agreement added $7,947.90 in settlement of West's claim that it was entitled to $15,053 in addition to the $90,000 because it was required to move 233,450 cubic yards, instead of only 200,000 cubic yards, to meet the contour specifications
 
 
 [3]
 The trial judge had suggested that the parties submit affidavits on the reasonable value of the dirt work performed by West, but the parties declined to follow this suggestion and instead stipulated that the question be decided upon the record made theretofore