**CENTRAL DISTRIBUTORS, INC.,**
Plaintiff-Appellee,

v.

**M. E. T., INC., Defendant,**
and
**Joseph L. Nellis, Defendant-Appellant.**
No. 28598.

United States Court of Appeals,
Fifth Circuit.
June 22, 1970.

**370**

Harris Buchbinder, Miami Beach, Fla., Bernard Marcus, New Orleans, La., Stanley J. Krieger, Washington, D. C., for defendant-appellant.

Carl K. Hoffman, Miami, Fla., for plaintiff-appellee.

Before BELL, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Central Distributors Inc. (Central) commenced this Florida-based diversity action for breach of a license agreement against M.E.T., Inc. and Joseph L. Nellis in early 1965. The case in different circumstances has already been before this Court twice, Central Distributors, Inc. v. M.E.T., Inc., 5 Cir., 1968, 403 F.2d 943; Nellis v. Fulton, 5 Cir., 1969 [No. 27917, June 3] (petition for writ of mandamus), and the merits of the dispute have at times been overlooked in a continuing quarrel about procedure. M.E.T., Inc. is no longer a party. Now, after five years, the issue of the measure of Nellis's liability to Central is presented to this Court. The District Judge awarded Central $52,426.85, plus costs, and Nellis appeals.

Under the license agreement at issue, Central leased space and established a hardware store in a Hialeah, Florida, shopping center developed by M.E.T., Inc. The agreement provided that the initial lease would extend from November 15, 1963, through November 30, 1966, and reserved to Central an option to terminate the agreement at the end of the first year's operation if the hardware store's gross retail sales amounted to less than $350,000. In the event that Central elected to terminate on this basis, the agreement also provided that M.E.T., Inc. would purchase the store's fixtures and stock-in-trade. Nellis executed a guaranty insuring M.E.T., Inc.'s performance regarding the purchases of fixtures and stock-in-trade from Central.

The store's total gross retail sales for the first year's operation amounted to less than $350,000 and Central elected to terminate the agreement. After M.E.T., Inc. and Nellis failed to comply with Central's demand that they purchase the fixtures and stock-in-trade, Central conducted a going-out-of-business sale beginning in January 1965. Central also filed this action for damages in the District Court. Its complaint alleged that M.E.T., Inc. had refused to make the promised purchases and that Nellis had ignored demands made upon him as M.E.T., Inc.'s guarantor. When Central completed the presentation of its case, the District Court granted M.E.T., Inc.'s motion for an order of dismissal under Fed.R.Civ.P. 41(b) on the ground that Central had failed to introduce any competent evidence to sustain its burden of proving damages. This Court reversed, stating:

> "In the case before us, Central sought to introduce certain records in order to prove damages. The exclusion of these records from evidence on the basis that they were not listed as exhibits in the pre-trial stipulation was critical and decisive. This ruling, if allowed to stand, effectively bars a meaningful examination of the only real issues present."

Central Distributors, Inc. v. M.E.T., Inc., 5 Cir., 1968, 403 F.2d 943, 946.

While this case proceeded at its snail's pace toward this Court for the first time, as the parties squabbled over procedure, Central retained possession of the fixtures. Unable to sell the fixtures at a price satisfactory to it, Central first stored them in a warehouse in Miami, Florida. Then, in the spring of 1966,

the fixtures were shipped to a store operated by Central in Providence, Rhode Island. Central erected and used the fixtures in that store until December 1967, when it went out of business at the Providence location. On May 1, 1968, Central sold the fixtures to Mall Furniture Company, which took over the operation of the Providence store and used the fixtures in place.

After we remanded the case to the District Court, pettifoggery continued, as court time and lawyer time were devoted to Nellis's various motions for continuances, change of venue, and like matters. The argument was complicated by the apparent inability of Nellis, himself a lawyer, to retain counsel to his liking who would be prepared for trial. Finally, in June 1969, a trial to the court on the merits of the parties' dispute began.

The District Court determined that Nellis was liable to Central in the amount of $52,426.85. It computed Central's damages as follows: (1) for the damages resulting from the failure to purchase the fixtures, Central was awarded $13,911.95; (2) for the failure to purchase the inventory, Central was awarded $20,935.84; (3) for other damages (closing expenses) caused by the breach of the license agreement, Central was awarded $6,492.90; (4) to the principal amount of damages, $41,340.69, the Court added interest calculated at 6 per cent from the date of breach, December 26, 1964, or $11,086.16.

We may not set aside the District Court's findings of fact unless these findings are clearly erroneous. Fed.R. Civ.P. 52(a); see, e. g., United States for Use and Benefit of Citizens National Bank of Orlando v. Stringfellow, 5 Cir., 1969, 414 F.2d 696; Chaney v. City of Galveston, 5 Cir., 1966, 368 F.2d 774. Having considered all the evidence in this case, we are not left with the definite, firm conviction that a mistake has been committed in connection with the awarding of damages to Central for its losses on the inventory and its closing expenses. Accordingly, we affirm the judgment of the District Court to the extent of these damages, $27,428.74, plus interest at 6 per cent from December 26, 1964, until paid. See United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 541–542, 92 L.Ed. 746 (1948). With respect to the damages awarded for Central's loss on the fixtures, however, we conclude that the judgment of the District Court must be reversed. By its actions in connection with the fixtures after M.E.T., Inc. and Nellis had failed to purchase them, Central manifested its decision to retain the fixtures for its own use rather than to press for the vindication of any claim it might have had against M.E.T., Inc. or Nellis. The record shows clearly that Central's sale of the fixtures to Mall Furniture Company, after these fixtures had been used by Central for approximately two years in its Providence store, was not an attempt to mitigate the damages occasioned by the breach of the license agreement, but was instead the culmination of a course of action taken independently of, and inconsistent with, prosecution of the claim against Nellis.

We have carefully considered Nellis's other contentions on this appeal and conclude that they are without merit. Discussion of these contentions would serve only to add more words to a case already too filled with them.

The judgment is affirmed in part and reversed in part.