**FIRST NATIONAL BANK IN GRAHAM,**
et al., Appellants,

v.

Emmett **SLEDGE,** et al., Appellees.

No. 18400.

Court of Civil Appeals of Texas,
Fort Worth.

May 7, 1981.

Rehearing Denied June 4, 1981.

Jennings, Montgomery, Dies & Turner
and Elton M. Montgomery, Graham, for
appellants.

Louis Dayne Miller, Graham, for appellees.

## OPINION

HUGHES, Justice.

Guy E. Meacham, the owner of two lots in Young County, Texas, and the First National Bank in Graham, the assignee of certain mechanic's and materialmen's notes and liens given to the original contractor, Bart Harris, have appealed the judgment of the trial court awarding full recovery (plus interest, costs and attorney's fees) of the claims asserted by Harris' subcontractors who furnished labor and materials in constructing improvements on the lots owned by Meacham.

We affirm.

Most of the facts have been stipulated to by the parties. Meacham was the owner of Lots nos. 44 and 48 in the Rolling Hills Estates—Second Addition to the City of Graham, Texas. In April 1973 Meacham entered into two mechanic's and materialmen's lien contracts with Harris pursuant to which Harris was to construct one house on each of the two lots at a price of $23,-383.00 each. Simultaneously, Meacham executed two mechanic's and materialmen's notes. (Meacham has not paid any part of the amounts due on the notes.) Soon after Meacham and Harris had contracted, Harris assigned the notes and liens (without endorsement) to the First National Bank in Graham as security for advances of money to be subsequently made to Harris during construction of the houses. This assignment was filed of record.

The house on Lot no. 48 was completed by Harris in October 1973 with $20,500.00 having been advanced by First National. The construction of the house on Lot no. 44 was not completed but was abandoned by Harris on or about October 30, 1973. At the time of Harris' abandonment, $22,500.00 had been advanced to Harris by First National.

Harris filed bankruptcy on or about October 30, 1973 and received a discharge in bankruptcy. The mechanic's and materialmen's notes were abandoned by the bankruptcy court.

Harris had separately subcontracted with Emmett M. Sledge, B. J. Brown, Ed. C.

Davis, Don McCluskey and Bob Brown (the "subcontractors") to furnish labor and/or materials for either or both of the lots. As of November 1, 1973 each of the subcontractors had filed a "Statement Securing Mechanic's and Materialmen's Lien Against Owner" (including attached invoices) in the mechanic's and materialmen's lien records of Young County, Texas. Meacham had received one copy of each of the subcontractors' affidavits by November 2, 1973.

In May 1974 First National filed a suit against the subcontractors (and Meacham as a nominal party) seeking declaratory judgment that the liens of the subcontractors were no longer of any force and effect and an adjudication removing the "Statements", purporting to secure mechanic's and materialmen's liens, as clouds upon the title to said lands. First National alternatively plead for an adjudication that the subcontractors' liens were inferior to the rights held by First National.

The subcontractors filed a cross-action against Meacham and First National seeking the establishment of their statutory liens in the total amount of $3,687.12 in regard to Lot no. 48 and in the total amount of $2,797.09 in regard to Lot no. 44. They also prayed for foreclosure of such liens, personal judgment against Meacham, attorney's fees, costs and interest.

Upon motion submitted by First National and Meacham, the trial court discharged the liens asserted by the subcontractors and in lieu thereof accepted a tender of funds into the registry of the court in an amount twice the sum of the claims asserted by the subcontractors.

The subcontractors moved for summary judgment against Meacham. This motion was granted by the trial court but the judgment was reversed and the case was remanded for trial in an appeal to this court. (The opinion was not published.)

After a trial on the merits the trial court determined that First National should take nothing in its declaratory judgment action. It also ordered that: The subcontractors recover their claims in the amount of $3,687.12 plus interest as to Lot no. 48; the

subcontractors recover their claims in the amount of $2,797.09 plus interest as to Lot no. 44; the subcontractors recover $2,500.00 in attorney's fees from Meacham; all costs were to be paid by Meacham and First National. (The amounts awarded the subcontractors were to be taken from the funds deposited into the registry of the court.)

█ Appellants' first five points of error assert that the subcontractors have not complied with the statutory requisites necessary to perfect their liens. They rely heavily on the doctrine of the "Law of the Case" arguing that as a result of this court's disposition of the previous summary judgment appeal, it is now established as a matter of law that the subcontractors are not entitled to judgment. We must point out that we decided no questions of law or fact in our previous decision. We held only that the trial court erred in rendering summary judgment because the subcontractors had failed to show that they were entitled to judgment *as a matter of law*. We expressly stated: "Our opinion is based solely on the rules governing summary judgments in effect at the time of trial; we express no opinion as to the merits of the cause." *First National Bank in Graham, et al. v. Emmett M. Sledge, et al.*, Docket No. 17946 (Tex.Civ.App.—Fort Worth, March 23, 1978) (unreported). We overrule Meacham's fourth and fifth points of error.

█ In Texas, a subcontractor (as that term is defined in Tex.Rev.Civ.Stat.Ann. art. 5452 (1980)) must rely on the rights bestowed upon him by the Hardeman Act (art. 5452 et seq.) in order to collect funds due from the owner to the original contractor. The subcontractor is a derivative claimant. By filing a lien affidavit and notifying the owner, pursuant to art. 5453, the subcontractor can impose upon the owner the duty of withholding funds due the original contractor. Arts. 5463 and 5469 impose the withholding requirements. Art. 5469 requires the owner to retain 10% of the contract price or the value of the work. Art. 5463 authorizes the owner to retain amounts sufficient to pay claimants meeting the notice requirements of Art. 5453.

Subparagraph 2 of art. 5463 provides in part:

"The owner shall in no case be required to pay, nor his property be liable for, any money, other than that required to be retained by him under the provisions of Article 5469 hereof, that he may have paid to the contractor before he is authorized under this Article to retain the money...."

Appellants' first three points of error allege that the trial court's order of recovery in favor of the subcontractors for the amount of their asserted liens was erroneous because: (1) the lien affidavits filed by the subcontractors were not in conformity with the law; (2) the subcontractors could not perfect liens by sending only one copy (as opposed to two copies) of their respective lien affidavits to Meacham; and (3) the subcontractors could not perfect their liens by sending a copy of the lien affidavit to Meacham in normal or regular mail as opposed to certified or registered mail.

█ The fact that the subcontractors sent their copies of the lien affidavits to Meacham by way of regular mail rather than certified or registered mail is insignificant because the parties stipulated that Meacham actually received a copy of the lien affidavits. Art. 5456(2) specifically renders the method of delivery immaterial whenever any written notice has actually been received.

█ The fact that only one copy of the lien affidavits was sent to Meacham by the subcontractors is likewise insignificant. Art. 5453(1) prescribes that two copies of the lien affidavit are to be sent to the owner; however, it is not evident from the record that Meacham was in any manner prejudiced by the fact that only one copy of the lien affidavit was sent to him. "The Legislature did not intend that the materialman should lose his lien through the technicalities of a warning, where the owner was not misled to his prejudice." *Hunt Developers, Inc. v. Western Steel Company*, 409 S.W.2d 443, 449 (Tex.Civ.App.—Corpus Christi 1966, no writ).

Appellants' assertions that the lien statements filed by the subcontractors were not in conformity with the law appear to be founded on the premise that the copies of the *lien affidavits* which were sent to Meacham were not true because the invoices referred to in the affidavits were not in fact attached.

There is a distinction made within art. 5453 between the lien affidavits and the notices which must be furnished the owner to entitle him to retain funds for the benefit of the subcontractors. The flush language of art. 5453(2)(b) requires that the "notices" be rather specific; however, art. 5455, which sets forth the form the lien affidavits are to take, dictates that the body of the lien affidavit need only contain a general statement of the nature of the claim, and expressly makes it unnecessary that the individual items of work done or materials furnished be specified.

The sworn lien affidavits filed by the subcontractors were in substantial compliance with the statute—the attachment of the invoices to the affidavits which were filed actually exceeded the statutory requirements. The fact that the copy of the lien affidavit which was received by Meacham did not have the invoices attached did not render such copy untrue. In any event, the record manifests no means by which Meacham was prejudiced by this manner of apprisal. We overruled Meacham's first three points of error.

Appellants' seventh, eighth, ninth, tenth and twelfth points of error relate to Meacham's assertion that the trial court erred in holding that the subcontractors' liens were superior to the liens held by First National.

It appears to be conceded by appellants that the subcontractors are entitled to the rights conferred by art. 5469. For the reason that the award of the trial court exceeded $2,338.30 on Lot no. 48 (10% of the contract price on the completed improvements) and $1,300.00 on Lot no. 44 (10% of $13,000.00 which was stipulated to as the value of the improvements), appellants complain that the trial court erred in not giving effect to the assignment of the promissory notes by Harris to First National.

Appellants rely on authorities such as *McCutcheon v. Union Mercantile Co.*, 267 S.W.2d 916 (Tex.Civ.App.—El Paso 1954, writ ref'd) which have held that where the original contractor has *negotiated* promissory notes to a holder in due course, subcontractors can thereafter fix no liens because the owner owes the original contractor, the party through which the subcontractors derive their rights, no more payment.

The question here is whether, aside from questions under art. 5469, the fact that the notes and liens were assigned to a third party as collateral security rather than negotiated distinguishes this case from those involving a holder in due course.

Here two considerations come into play. On the one hand, owners should not be subject to double liability when they comply with the provisions of the Hardeman Act, art. 5463(2). On the other hand, the Hardeman Act is to be construed liberally for the purpose of protecting laborers and materialmen. *Hayek v. Western Steel Company*, 478 S.W.2d 786 (Tex. 1972).

Under the particular facts of this case the rights of the subcontractors must prevail. Unlike the cases involving holders in due course, the transfer here was made without endorsement. If First National were to present the note to Meacham for payment Meacham, for his own protection, would have the right, without dishonor, to refuse to pay First National because, without Harris' endorsement, First National would not be the holder of the instrument. See: Tex.Bus & Comm.Code Ann. sec. 3.505 (1968). This question, however, is not actually before us.

There being no endorsement running to it, First National is relegated to the rights of an assignee. Where assignments have been considered in relation to the mechanic's and materialmen's lien statutes notice of the assignment given to the owner before the notice of claims of subcontractors is given appears to be a primary concern. *Campbell v. Hildebrandt*, 68 Tex. 22, 3 S.W. 243 (1887); *Hardin Lumber Co. v.*

*Shepherd,* 40 S.W.2d 215 (Tex.Civ.App.—Galveston 1931, dismissed); *Gordon-Jones Const. Co. v. Welder,* 201 S.W. 681 (Tex.Civ.App.—San Antonio 1918, writ ref'd); *South Texas Lumber Co. v. Concrete Const. Co.,* 139 S.W. 913 (Tex.Civ.App.—Galveston 1911, no writ).

■ The record before us is absolutely devoid of any indication that Meacham was notified of the assignment of the rights of the transferor, Harris, to the transferee, First National. There being no such evidence we are entitled to presume that as between Harris and First National, Meacham's duties of payment ran to the former at the time the subcontractors filed the lien affidavits and notified Meacham; therefore, the subcontractors, who derive their rights through the original contractor were able to perfect their liens. We overrule appellants' seventh, eighth, ninth, tenth and twelfth points of error.

Appellants' sixth and eleventh points of error relate to the matter of attorney's fees. The sixth point of error asserts that the trial court erred in holding as a matter of law that there was a necessity for the subcontractors to incur attorney's fees by reason of the conduct of Meacham. The eleventh point of error asserts that the trial court erred in holding that art. 2226 would permit the creditors of the original contractor, Harris, to recover attorney's fees on said indebtedness against the owner, Meacham.

Meacham had a duty to withhold funds owed to the original contractor after he received notice from the subcontractors. Harris did not controvert the claims made by the subcontractors as he could have under art. 5463. Meacham's nonpayment despite his receipt of the claims of the subcontractors necessitated the filing of the cross-claim of the subcontractors.

■ The subcontractors, having been found to have claims for "labor done" and "material furnished" pursuant to the written contract between the owner and original contractor through which they derived their rights, we hold that the attorney's fees incurred by the subcontractors as a result of Meacham's refusal to pay were recoverable by virtue of art. 2226. We overrule Meacham's sixth and eleventh points of error.

The judgment of the trial court is in all things affirmed.