**FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver, Plaintiff,**

v.

**REGISTRY HOTEL CORPORATION and Registry Dallas Associates, Defendants.**

Civ. A. No. CA 3–85–1085–G.

United States District Court, N.D. Texas, Dallas Division.

Feb. 24, 1986.

T. Ray Guy & Janie L. Frank, Jenkens & Gilchrist, Dallas, Tex., for plaintiff.

---

E. Russell Nunnally & Alan B. Rich, Johnson & Swanson, Dallas, Tex., for defendants.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the motion for summary judgment of defendants Registry Hotel Corporation and Registry Dallas Associates ("Registry"). After considering the arguments of counsel and the supporting affidavits, the court concludes that the motion should be denied.

### Posture of the Case

On December 10, 1985, the court denied Registry's motion for summary judgment, holding that Tex.Bus. & Com.Code § 9.318(b) (Vernon Supp.1986) governed the transaction at issue and that material issues of fact existed as to whether the assigned contract was terminated "in good faith and in accordance with reasonable commercial standards." After plaintiff, Federal Deposit Insurance Corporation ("FDIC"), apparently satisfied itself through pretrial discovery that Registry had acted in good faith and in accordance with reasonable commercial standards, it requested the opportunity to brief another issue in response to Registry's motion. The court granted the request and now addresses the newly-raised issue.

### Legal Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). *See, e.g., Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985); *Albertson v. T.J. Stevenson & Company, Inc.*, 749 F.2d 223, 228 (5th Cir.1984).

In considering a motion for summary judgment, the court must inspect the entire record and draw all reasonable inferences in favor of the party opposing the motion. *In re Municipal Bond Reporting Antitrust Litigation*, 672 F.2d 436, 440 (5th Cir.1982).

The movant has the burden of showing that no genuine issue of material fact exists, but the nonmovant must respond to an otherwise sufficient motion:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). *See, e.g., United States v. An Article of Drug Consisting of 4,680 Pails, Each Pail Containing Sixty Packets*, 725 F.2d 976, 984–85 (5th Cir.1984); *Smith v. Flagship International*, 609 F.Supp. 58, 62 (N.D.Tex.1985).

### Factual Background

FDIC, as receiver of Indian Springs State Bank of Kansas City, Kansas ("the Bank"), filed this case to recover loans extended to Frownfelter Construction Company ("FCC"). The following facts are undisputed:

1. The Bank made a series of loans to FCC in the total principal amount of $102,-217.92. Repayment was due in May and June 1983.

2. On February 24, 1982, FCC and Registry executed a $170,000 construction contract.

3. In consideration for the loans, Stanley Frownfelter ("Frownfelter"), owner and president of FCC, signed a security agreement giving the Bank a security interest in the Registry contract.

4. On April 16, 1982, Registry accepted the assignment by executing the following acknowledgment:

This assignment is acknowledged and accepted this 16th day of April, 1982, and

assignee will be named as co-payee on any disbursement of above named contract.

J.R. Thoele, vice-president and secretary-treasurer of the Registry Hotel Corporation, signed the acknowledgment and acceptance.

5. Prior to November of 1982, Registry terminated the contract for failure of FCC to obtain the necessary bonds.

6. In November of 1982, Registry contracted with Uni-Lock Pavestone ("Pavestone"), FCC's former subcontractor, to perform the work FCC was to perform.

7. In January of 1983, Pavestone subcontracted with Frownfelter's company Pave-Lock Systems to provide labor for the installation of paving stones.

8. FCC defaulted on the loans, and FDIC sued Registry for the $102,217.92 deficiency.

### Basis of the Suit

■ An effective assignment requires notice to the account debtor (1) that the amount due or to become due has been assigned and (2) that payment is to be made to the assignee. Tex.Bus. & Com. Code Ann. § 9.318(c) (Vernon Supp.1986). *See Olshan Lumber Company v. Bullard*, 395 S.W.2d 670, 672 (Tex.Civ.App.—Houston 1965, no writ). The court concludes that the assignment of the Registry-FCC contract was effective.

■ If an account debtor fails to comply with a valid assignment and improperly pays the assignor, the account debtor may be liable to the assignee for the amount of the improper payment. *Estate of Haas v. Metro-Goldwyn-Mayer, Inc.*, 617 F.2d 1136, 1139 (5th Cir.1980); *Citizens National Bank of Orlando v. Vitt*, 367 F.2d 541, 547 (5th Cir.1966); *Manes Constructions Company, Inc. v. Wallboard Coatings Company, Inc.*, 497 S.W.2d 334, 337 (Tex. Civ.App.—Houston [14th Dist.] 1973, no writ); *East Texas Bank & Trust Company v. Mid-South Contractors, Inc.*, 451 S.W.2d 782, 784 (Tex.Civ.App.—Tyler 1970, no writ).

FDIC contends that Registry failed to pay the Bank in accordance with the assignment. It therefore seeks to recover from Registry the outstanding amount of Frownfelter's debt.

### Preliminary Issues

Registry argues that it is not liable to FDIC as a matter of law because, as a result of FCC's breach of a material bonding condition, it terminated FCC's contract thus making no payments to FCC from the date of the assignment until the present date. Thus, it concludes, termination relieved it of any obligation it may have had to FDIC.

Tex.Bus. & Com.Code Ann. § 9.318(b) (Vernon Supp.1986) provides for modification or substitution of an assigned contract:

So far as the right to payment or a part thereof under an assigned contract has not been fully earned by performance, and notwithstanding notification of the assignment, any modification of or substitution for the contract made in good faith and in accordance with reasonable commercial standards is effective against an assignee unless the account debtor has otherwise agreed but the assignee acquires corresponding rights under the modified or substituted contract.

Pretermitting its "good faith" argument for purposes of the present motion, FDIC contends that it acquired "corresponding rights under the modified or substituted contract," and that Registry waived any defense it might have had to the original contract by entering into the new agreement. The court need not address the latter contention because its conclusion as to the former argument is dispositive.

FDIC contends that "[d]etermining whether the particular contractual gyrations between Registry, Frownfelter, and Pavestone constitute the type of arrangement that qualifies as a substituted or modified contract with concomitant corresponding rights for the assignee is necessarily a factual issue" (Letter Brief of February 11, 1986 at 2). To substantiate its

proposition, FDIC relies on the following portion of a law review article written by the assistant reporter and later reporter of Article Nine of the Uniform Commercial Code:

> If the new arrangement is far enough removed, in time or in subject matter, from the original contract, it may be assumed that the 'corresponding rights' claim would fail. On the other hand, if the new arrangement follows hard on the heels of the original contract and deals roughly with the same subject matter, then it seems that the assignee should be entitled to his 'corresponding rights'....

Gilmore, *The Assignee of Contract Rights and His Precarious Security,* 74 Yale L.J. 217, 258 (1964). FDIC contends that Gilmore enunciates a "reasonableness" standard which necessarily is a factual issue.

The court concludes that, at least for purposes of this case, the issue of corresponding rights is a legal question. Resolution of the instant motion does not require resolving the temporal connection or the subject matter identity of the various contracts but, rather, requires construction of a statute, an issue of law.

FDIC argues that § 9.318(b) is not limited strictly to modifications or substitutions but encompasses a termination or rescission of a contract. For purposes of this motion, the court assumes, without deciding, that the terms "modification" and "substitution" include terminations and rescissions.

### Analysis

■ FDIC argues that it has corresponding rights in the new contract because, in spite of the termination of the FCC contract, Frownfelter performed an active role throughout the construction project. Thus, regardless of the entrance of a third party (Pavestone) into the contractual relationships, FDIC reasons the same parties performed the same functions. Consequently, according to FDIC, money paid to Frownfelter, either directly by Registry or indirectly through Pavestone, should have been paid to FDIC, so that Registry is liable to FDIC for amounts so paid.

FDIC does not identify in which of the two new contracts it claims corresponding rights. Registry originally contracted with FCC. Upon FCC's failure to secure the requisite bonds, Registry terminated the original agreement and contracted with Pavestone to perform the work FCC was to perform. Pavestone then subcontracted with Pave-Lock, Frownfelter's new company, for labor on the project.

Consequently, no single contract was substituted for the original agreement. Pavestone was not a party to the original contract and there is no showing that it knew of the prior financing arrangement. Further, Registry could not pay FDIC by withholding a portion of the money contractually owed Pavestone without breaching the Pavestone agreement. Nor could Pavestone pay FDIC sums it contractually owed Pave-Lock. Apparently, no contract in any form between Registry and Pavestone, on the one hand, or Pavestone and Pave-Lock on the other, was ever assigned, and neither Registry nor Pave-Lock ever executed an acknowledgment of assignment of the new contracts. Neither contract existed in a prior form so as to qualify as a substitution or modification of an earlier contract.

Thus, since the original parties to the assigned contract were not in privity after the breach, FDIC could not acquire corresponding rights in any new contracts. The new contracts simply did not correspond to the original agreement, and the twin facts that both Registry and Frownfelter were parties to the same general transaction and that Registry was aware of Frownfelter's new role at the time the Registry-Pavestone contract was executed are of no legal effect for purposes of FDIC's claim to corresponding rights.

FDIC contends that Comment 2 to 9–318 supports its claim to corresponding rights. That Comment posits a government agency forced to cut back or modify existing contracts. Section 9–318(2), according to the Comment, permits the prime contractor, the account debtor, to make comparable

arrangements with its subcontractors "without undertaking the task of procuring assents from the many banks to whom rights under the contracts may have been assigned."

The court concludes that the Comment does not fortify FDIC's position. The example contemplates execution of new contracts between parties to the original contracts, not the addition of a third party to a transaction and an alteration of contractual privity.

The construction of 9–318(2) advanced herein does not leave an aggrieved assignee without recourse. The assignee is protected by the provision of § 9–318(2) requiring good faith and commercial reasonableness. Thus, modifications or substitutions that are fraudulent or intended to circumvent the assignee's rights are ineffective against the assignee.

### Conclusion

The court reaffirms its prior order, concluding that the only remaining factual issues, if any, are whether the modification or substitution at issue was undertaken in good faith and in accordance with commercial reasonableness. Accordingly, Registry's motion for summary judgment is DENIED.

SO ORDERED.