BANK ONE, TEXAS, N.A., Appellant,

v.

COMMUNICATION SPECIALISTS, INC., Appellee.

No. 6–90–041–CV.

Court of Appeals of Texas, Texarkana.

July 30, 1991.

Carol T. Kennedy, Bonnet Resources Corp., Houston, for appellant.

Bill Zook, Ted B. Lyon & Associates, Mesquite, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Bank One, Texas, N.A. appeals from a summary judgment granted to Communication Specialists, Inc. in a garnishment action. Bank One complains that the trial court erred in granting CSI's motion for summary judgment and in denying its motion for summary judgment.

The facts are basically undisputed, and the only issue arises in applying the law to the facts. On June 10, 1988, the Lithoprint Company filed a suit against Healthcare International, Inc. seeking to garnish accounts payable which it contended were owed by Healthcare to Creel Morrell, Inc. MBank Houston, National Association, predecessor in interest to Bank One, intervened in the garnishment action on the basis of its security interest in the accounts receivable of Creel Morrell. CSI also intervened in the action, asserting an original claim against Healthcare based on an agreement between CSI, Healthcare, and Creel Morrell.

On June 7, 1985, May 14, 1986, February 1, 1987, and May 10, 1987, Creel Morrell granted MBank security interests in, among other things, all of its accounts receivable. MBank filed a financing statement with the Secretary of State of Texas on June 17, 1985, stating that it had an interest in all Creel Morrell's accounts receivable "whether now existing or hereafter arising...."

In January of 1988, Creel Morrell and Healthcare entered into a contract requiring Healthcare to pay Creel Morrell for providing goods and services for the production of brochures for Healthcare and HealthVest (an entity related to Healthcare). Creel Morrell then contracted to pay CSI to perform the printing work on the brochures. In June of 1988, Creel Morrell, Healthcare, and CSI entered into a new agreement providing that Healthcare would pay CSI directly for printing the brochures, instead of paying Creel Morrell.

On June 10, 1988, Lithoprint initiated the garnishment action against Healthcare. MBank filed a petition to intervene in the action, alleging that it had a superior right to the accounts owed by Healthcare to Creel Morrell that were claimed by Lithoprint, CSI, and other creditors. Upon Lithoprint's failure to post an additional $100,000.00 bond, MBank filed a motion to dissolve the garnishment. Before the motion was heard, Lithoprint filed an involuntary petition under Chapter 7 of the United States Bankruptcy Code against Creel Morrell, staying further action in the proceeding. On November 22, 1988, MBank was granted an agreed order of relief to pursue all its claims against Creel Morrell.

On February 28, 1989, CSI filed a petition to intervene in the garnishment action against Healthcare. CSI also filed a motion for interlocutory summary judgment, a motion for severance, and a motion for final judgment after severance, alleging that it had a superior right to the account owed by Healthcare. On November 7, 1989, the trial court granted these motions.

On appeal, Bank One maintains that it is entitled to recover the funds held by Healthcare as a matter of law and that CSI's intervention in the garnishment action violated the automatic stay brought about by the bankruptcy of Creel Morrell.

In a summary judgment proceeding, the movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a.

■ Bank One correctly contends that it was a creditor with a perfected security interest in the accounts receivable of Creel Morrell. "Accounts" are defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." Tex.Bus. & Com.Code Ann. § 9.106 (Vernon Supp.1991). Bank One contends that its perfected security interest in the Creel Morrell accounts receivable gives it priority over other claims. Bank One further contends that once Creel Morrell and Healthcare entered into their agreement, its rights in the accounts receivable attached and could not be compromised by the subsequent unauthorized action of its debtor or third parties.

The outcome of the suit depends upon the applicability of Tex.Bus. & Com.Code Ann. § 9.318(b) (Vernon Supp.1991):

So far as the right to payment or a part thereof under an assigned contract has not been fully earned by performance, and notwithstanding notification of the assignment, any modification of or substitution for the contract made in good faith and in accordance with reasonable commercial standards is effective against an assignee unless the account debtor has otherwise agreed but the assignee *acquires corresponding rights under the modified or substituted contract.* The assignment may provide that such modification or substitution is a breach by the assignor.

(Emphasis added.)

Bank One concedes that the substitution was made in good faith and in accordance with commercially reasonable standards. Bank One contends that Section 9.318 offers defenses which are only applicable to account debtors, citing *BOC Group, Inc. v. Katy Nat. Bank*, 720 S.W.2d 229 (Tex. App.—Houston [14th Dist.] 1986, no writ). The *BOC* case, however, refers to the defenses mentioned in Subsection (a) of Section 9.318. The section being applied in the present case is Subsection (b), which is not so limited.

Bank One further contends that the substituted contract could not qualify under Section 9.318(b) because, as assignee, Bank One did not receive corresponding rights under the modified or substituted contract. If this provision is interpreted to mean that the modified or substituted contract cannot affect the collateral of the assignee, then this section would be rendered meaningless. The assignee would have no right to complain about a modification that did not affect his security rights. Such modifications to the contract could be made without the Section 9.318(b) provision, and the assignee would have no basis to complain.

In the case of *Federal Deposit Insurance Corp. v. Registry Hotel Corp.*, 658 F.Supp. 311 (N.D.Texas 1986), the Court concluded that when a third party is brought in by substitution and the new contract does not correspond to the original agreement because of an alteration of the contractual privity, then the language about corresponding rights in Section 9.318(b) is not applicable. In other words, if under the new arrangement there is no longer an account receivable from a third party to the assignor, then there is no corresponding right to which the assignee can be entitled.

The assignee has three built-in protections under the section: (1) the modification or substitution cannot be used to hamper the rights of the assignee to any payment or a part of any payment that has been earned; (2) it must be made in good faith; and (3) it must be made in accordance with reasonable commercial standards. In addition to these protections, the assignment may provide that a modification or substitution is a breach by the assignor.

The corresponding rights to which the assignee is entitled must be interpreted to mean that the assignee will still be entitled to such collateral or accounts receivable to which the account creditor is entitled under the modified or substituted contract. In the present case, the total amount of the

account receivable was initially $47,780. After the modification, making $23,573.39 payable directly to CSI, Bank One was still entitled to the remainder of the account receivable, $24,206.61. Therefore, Bank One still held its corresponding rights in the modified or substituted contract, but those rights were only to the amount that Creel Morrell, its assignor, possessed after the modification. On this basis, we determine that the summary judgment was correctly granted to CSI and was correctly denied to Bank One.

Next we address the contention that CSI's intervention and subsequent action in this case violated the automatic stay provision of the bankruptcy court. We shall not attempt to speak for the bankruptcy court, but for purposes of reviewing this appeal, we have determined that this was not an action against Creel Morrell but rather was an action against Healthcare. The bankruptcy action does not prohibit CSI's proceeding to judgment against Healthcare. This point of error is overruled.

The judgment of the trial court is affirmed.